# Exhibit 3

**Richard Leung, MD v. Unum Life Insurance Company of America**

April 4, 2023

Debra A. Conner, JD
500 Diamond Circle
Apt 505
Naples, FL 34110

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

(14) Directly advising a claimant not to obtain the services of an attorney.

(15) Misleading a claimant as to the applicable statute of limitations.

(16) Delaying the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome or AIDS-related complex for more than 60 days after the insurer has received a claim for those benefits, where the delay in claim payment is for the purpose of investigating whether the condition preexisted the coverage. However, this 60-day period shall not include any time during which the insurer is awaiting a response for relevant medical information from a health care provider.

### Unfair Claim Settlement Practices & Duty of Good Faith and Fair Dealing

The California Unfair Claims Settlement Practices Act, as noted above, sets forth practices that insurance companies are prohibited from engaging in when handling a claim. Whether the insurer has committed "bad faith" and violated the "duty of good faith and fair dealing" can be a complicated legal determination better left to the courts as determined by the facts and circumstances of the case. However, certain industry practices have arisen because of the regulatory environment and case law in California. This is the context from which I provide my opinions and not as a legal opinion.

In my review of the claim file, I found no evidence Unum violated any provisions of the Unfair Claims Settlement Practices. They provided detailed explanations in their communications with Dr. Leung including their decision letter dated July 23, 2019 wherein they set forth the reasons Dr. Leung claim was approved until April 30, 2019 and thereafter did not meet the definition of "Total Disability"; as well as their appeal decision letter dated November 21, 2019 when they re-opened the individual disability claim for benefits and declined the LTD benefits because she was not "active at work". Their communications in keeping Dr. Leung informed and ultimate decisions were timely. Even Dr. Leung told Matthew Masny that Stephen Sweetland was very responsive.

In California, and other jurisdictions, there is an implied covenant of good faith and fair dealing. This is a covenant that implies that both parties have an obligation to act in good faith to fulfill the terms of the contract. In California "bad faith" may arise when an insurer unreasonably denies, delays, terminates or reduces benefits without proper cause.

The duty of good faith is ongoing. However, when a claim has been closed by an insurer and claimant has chosen to file a lawsuit, the ongoing duty of good faith may be satisfied through the process of litigation. Thus, once the claimant decides to pursue a decision from a court of competent jurisdiction it is not industry practice or appropriate for the claim department to reopen a closed claim and to actively manage a closed claim that is the subject of litigation. Where a closed claim is the subject of litigation, the ongoing duty of good faith may be satisfied through the further evaluation of the claim determination as developed through the litigation process, including through retention of experts and the evaluation of new information through the discovery process. If warranted, the insurer could overturn an adverse decision through this process. There may be instances in which a disputed claim is in litigation and is still open, in that case there may be ongoing management of the claim by the claim department.

9

3. Claimant provides more information than requested to facilitate claim processing. In addition to the initial claim form, Dr. Leung submitted a 10-page narrative that detailed his history from 1981 to the date of disability. Throughout the duration of the claim, he submitted multiple narratives both on the telephone and in writing.

4. Omission of material information. Dr. Leung failed to mention anything about the sale of his business on November 1, 2019. Dr. Leung did not mention that he had suffered a myocardial infarction with stent placement in early February 2019 [000257] nor did he submit a corresponding claim. In a disability claim this type of information is important.

5. Dr. Moon "certified" Dr. Leung as totally and permanently disabled for purposes of the worker's compensation carrier, Unum and Northwest Mutual. Additionally, in his office visit dated April 8, 2020 Dr. Moon indicates that "the patient believe [sic] the physical limitations are interfering with his ability to perform his usual and customary duties as an Ophthalmologist. He will medically retire on April 30, 2020." First, it is highly unusual for an attending physician to use language that is used in an insurance policy. Dr. Moon submitted certifications to Worker's Compensation, Unum, and Northwestern that Dr. Leung was totally and permanently disabled. This is in stark contrast to the FMLA paperwork where "Dr. Moon" indicated Dr. Leung needed a "leave of absence to obtain a course of recommended treatment to include physical therapy, observation, and surgical options (once off blood thinners)". He estimated the length of the FMLA accommodation "To be determined based on response to treatment to include physical therapy, observation, and surgical options (once off blood thinners)." [Moon deposition exhibit, 1049]

**Cary Albertstone Report and Ongoing Duty of Good Faith**

When a claim has been closed by an insurer and claimant has chosen to file a lawsuit, the ongoing duty of good faith may be satisfied through the process of litigation. Thus, once the claimant decides to pursue a decision from a court of competent jurisdiction it is not industry practice or appropriate for the claim department to reopen a closed claim and to actively manage a closed claim that is the subject of litigation. In this case Dr. Leung's attorneys submitted a Medical Report and a "Supplemental Report" by Cary D. Albertstone dated August 19, 2022 and February 16, 2023 respectively. I note the Complaint against Unum was filed on April 25, 2022 and his claim was closed on June 28, 2022.

The claim department does not typically manage or review these types of documents in a vacuum in litigation. In this case Unum sought to subpoena Dr. Albertstone's records. This request was met with a refusal to produce the documents. It is untenable that Unum is not allowed access to the information the report was based upon. It is unclear, from a claim department perspective what Dr. Albertstone's role is in the production of his reports. The objection to the subpoena indicates he is one of Dr. Leung's "experts". It is not industry practice in this type of situation to review these types of records in litigation. The scope of discovery and expert disclosures in litigation is voluminous and is a part of the process of litigation. Unum has acted within industry standards and practices with respect to Dr. Albertstone's "expert" reports.

**Management Oversight**

Management oversight through Management reviews was consistent throughout the claim.
Key decision points in the file were reviewed by Adam Stimson and Jamie Allard. Additionally, during the appeal an Appeal Quality Consultant was involved with the claim.