UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. LEUNG, MD,<br><br>                                Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>                                Defendant. | Case No.: 22-cv-00767-W-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSE BY DEFENDANT TO REQUEST FOR PRODUCTION OF DOCUMENTS (SET NO. 3); AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSE BY DEFENDANT TO REQUEST FOR PRODUCTION OF DOCUMENTS (SET NO. 4)**<br><br>**[ECF Nos. 23, 38]** |

Before the Court are two motions to compel filed by Plaintiff Richard J. Leung, M.D. ("Plaintiff"). (ECF Nos. 23, 38.) In the first motion, Plaintiff seeks to compel Defendant Unum Life Insurance Company of America ("Defendant") to provide further responses to Plaintiff's Request for Production of Documents, Set Three. (ECF No. 23.) Defendant opposes. (ECF No. 26.) In the second motion, Plaintiff seeks to compel Defendant to

provide further responses to Plaintiff's Request for Production of Documents, Set Four. (ECF Nos. 38, 44.)  Defendant opposes.  (ECF No. 42.)

For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to compel further response to Request for Production of Documents, Set Three (ECF No. 23), and **DENIES** Plaintiff's motion to compel further response to Request for Production of Documents, Set Four (ECF No. 38).

I.  BACKGROUND

This lawsuit arises from a dispute over benefits under several disability income insurance policies Defendant issued to Plaintiff, who claims to be totally disabled as of May 2020 due to purported accidents occurring as far back as 1982.  (ECF No. 1 ("Compl.") at ¶¶ 1–3, 30–32, 38; *see also* ECF No. 26 at 2.)  Under Plaintiff's policies, benefits are payable for up to the longer of 24 months or age 65 for disabilities due to sickness, and for an insured's lifetime for disabilities due to accident, if the disability starts prior to the age 65 policy anniversary.  (ECF No. 26 at 2.)  Plaintiff, prior to his 65th birthday, submitted a claim to Defendant, contending his disability resulted from accidents which caused pain, numbness, and loss of mobility in his lumbar and cervical spine.  (*Id.*; *see also* Compl. ¶ 31.)  Defendant determined Plaintiff's claim was due to sickness and paid the maximum benefits for 24 months.  (ECF No. 26 at 2; *see also* Compl. ¶¶ 5, 34, 39.)  In his Complaint, Plaintiff brings claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing, disputing Defendant's claim determination. (Compl. at 7–10.)  Plaintiff maintains he is totally disabled due to accidents and entitled to continued benefits for his lifetime.  (*Id.*)

In his first motion, Plaintiff seeks to compel further responses to Requests for Production ("RFP") Nos. 53 and 54 in Plaintiff's Request for Production, Set Three.  (ECF No. 23.)  The requests at issue and responses thereto are as follows:

> **RFP No. 53:** YOUR billing DOCUMENTS or other financial writings that indicate the total number of times (in yearly or monthly summaries) that YOU

hired Dane Street – A Medical Review Company from 2016-2021.  (Personal identifying information of other insureds should be redacted if applicable).

**Response:** Defendant objects to this request on the grounds set forth in the General Objections and further objects on the grounds that: (1) it is vague and ambiguous, particularly as to the phrase "your billing DOCUMENTS or other financial writings" as it does not state with reasonable clarity the documents sought; (2) it is overly broad in time and scope, particularly since Plaintiff did not submit his claim until June of 2020; (3) it seeks documents that are not relevant to the claims or defenses of any party to this litigation and it is not proportional to the needs of the case.  Furthermore, it seeks documents that were not considered in the evaluation of Plaintiff's claim; (4) given the breadth of the request and in conjunction with the vague and ambiguous objection, Defendant further objects to this request: (i) to the extent this request encompasses post litigation documents that would be protected by the attorney-client privilege and/or work product doctrine; (ii) to the extent it seeks to discover confidential business records, private employment information of third parties to this lawsuit which may not be disclosed without infringing on a third-party's privacy rights; and (iii) to the extent Defendant is unable to assess burden, if any, and proportionality.

**RFP No. 54:** All 1099-MISC and/or W-9 forms issued to Dane Street – A Medical Review Company by YOU, from 2016-2021 for services provided to DEFENDANT.

**Response:** Defendant objects to this request on the grounds set forth in the General Objections and further objects on the grounds that: (1) it is overly broad in time and scope; (2) it seeks documents that are not relevant to the claims or defenses of any party to this litigation and it is not proportional to the needs of the case.  Furthermore, it seeks documents that were not considered in the evaluation of Plaintiff's claim; and (3) given the breadth of the request, Defendant further objects to this request: (i) to the extent this request encompasses post litigation documents that would be protected by the attorney-client privilege and/or work product doctrine; (ii) to the extent it seeks to discover confidential business records.

(ECF No. 23-2.)

After Defendant served responses to Plaintiff's Request for Production, Set Three, on November 7, 2022, the parties met and conferred on multiple occasions. (ECF Nos. 23-1 at 2; 23-2; 26 at 6–7.)  The parties thereafter lodged a Joint Discovery Statement addressing the RFPs at issue on December 7, 2022. (ECF No. 17.)  The Court held an

informal Discovery Conference on December 15, 2022. (ECF No. 18.) The parties further met and conferred after the Discovery Conference. (ECF No. 23-1 at 2.) Despite the parties' meet and confer efforts, they were unable to resolve their dispute as to RFP Nos. 53 and 54 and filed the present motion in accordance with the Court's briefing schedule. (*See* ECF Nos. 22; 23-1 at 2.)

In his second motion, Plaintiff seeks to compel further responses to RFP Nos. 58, 59, 67, 68, and 76 in Plaintiff's Request for Production, Set Four, which was served on December 14, 2022. (ECF Nos. 38; 42 at 5.) The requests at issue and responses thereto are as follows:

> **RFP No. 58:** Produce UNUM's Quality Assurance Tool as identified in the Statement of Work between Dane Street, LLC and UNUM (At LEUNG-RFP50-002, paragraph 1.11) in effect in 2020 to the present.
>
> **Response:** Defendant incorporates the General Objection above and further objects to this Request on the following grounds: (1) it seeks production of an application, not a document; (2) it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action; (3) it is not proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues, particularly because it seeks information not used in the adjudication of Plaintiff's claim; (4) it is overbroad; and (5) it seeks confidential trade and business data or other non-public, proprietary, or confidential documents or information protected from disclosure by applicable law.
>
> **RFP No. 59:** Produce UNUM's Quality Assurance Standards to Dane Street as identified in the Statement of Work between Dane Street, LLC and UNUM in effect from 2020 to the present (At LEUNG-RFP50-003).
>
> **Response:** Defendant incorporates the General Objection above and further objects to this Request on the following grounds: (1) it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action; (2) it is overbroad in scope; (3) it is not proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues, particularly because it seeks information not used in the adjudication of Plaintiff's claim;

(4) it is overbroad; and (4) it seeks confidential trade and business data or other non-public, proprietary, or confidential documents or information protected from disclosure by applicable law.

**RFP No. 67:** Produce all monthly monitoring reports between May 2020 and January 2022 as identified in the Statement of Work (SOW) for Dedicated Medical Officer Review Services between Dane Street, LLC and UNUM.

**Response:** Defendant incorporates the General Objection above and further objects to this Request on the following grounds: (1) it is vague and ambiguous; (2) it seeks documents which are not relevant to the claims or defenses of the parties to this litigation; (3) it is overbroad in scope and unduly burdensome; (4) it is not proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues, particularly because it seeks information not used in the adjudication of Plaintiff's claim; and (5) it seeks confidential trade and business data or other non-public, proprietary, or confidential documents or information protected from disclosure by applicable law.

**RFP No. 68:** Produce all issues and Outcome Reports between May 2020 and Jan 2022 as identified in the Statement of Work (SOW) for Dedicated Medical Officer Review Services between Dane Street, LLC and UNUM.

**Response:** Defendant incorporates the General Objection above and further objects to this Request on the following grounds: (1) it is vague and ambiguous; (2) it seeks documents which are not relevant to the claims or defenses of the parties to this litigation; (3) it is overbroad in scope and unduly burdensome; (4) it is not proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues, particularly because it seeks information not used in the adjudication of Plaintiff's claim; and (5) it seeks confidential trade and business data or other non-public, proprietary, or confidential documents or information protected from disclosure by applicable law.

**RFP No. 76:** Produce all UNUM Companies Supplier Reports between Dane Street and UNUM as identified in the Statement of Work (SOW) for Dedicated Medical Officer Review Services between Dane Street, LLC and UNUM.

**Response:** Defendant incorporates the General Objection above and further objects to this Request on the following grounds: (1) it seeks documents which

>are not relevant to the claims or defenses of the parties to this litigation; (2) it is overbroad in scope and unduly burdensome; (3) it is not proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues, particularly because it seeks information not used in the adjudication of Plaintiff's claim; and (4) it seeks confidential trade and business data or other nonpublic, proprietary, or confidential documents or information protected from disclosure by applicable law.

(ECF No. 38-3.)

After Defendant served responses to Plaintiff's Request for Production, Set Four, on January 30, 2023, the parties met and conferred. (ECF Nos. 38 at 11; 42 at 6.) The parties thereafter lodged a Joint Discovery Statement addressing these RFPs on March 8, 2023. (ECF No. 33.) The Court held an informal Discovery Conference on March 23, 2023. (ECF Nos. 33, 34.) Despite the parties' meet and confer efforts, they were unable to resolve their dispute as to RFPs 58, 59, 67, 68, and 76, and filed the present motion in accordance with the Court's briefing schedule. (ECF No. 35.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery of any nonprivileged information discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1), as amended in 2015, provides that parties—

>may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id*.

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. *Id*. The 2015 amendment to Rule 26(b) deleted the phrase

"reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment; *see also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017). The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

Under Federal Rule of Civil Procedure 34, a party may request the production of documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). If a party fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a).

## III.  DISCUSSION

### A.  Motion to Compel Request for Production, Set Three (ECF No. 23)

#### 1.  Parties' Arguments

Plaintiff contends the primary dispute in the case is over whether his disability is due to sickness or an accident—*i.e.*, whether his cervical spine and lumbar spine disabilities and impairments are due to diffuse degenerative disc disease or industrial injuries. (*See* Compl. ¶ 38; *see also* ECF No. 23 at 2.) Defendant has determined that Plaintiff's claimed disability is due to sickness, while Plaintiff claims his disability is due to an accident. (ECF

No. 23 at 2.) This determination impacts Plaintiff's recovery under his insurance policies with Defendant. (*See* ECF No. 26 at 2.)

In determining that Plaintiff's disability is due to sickness, Defendant relied on the opinions of a third-party medical review company, Dane Street, LLC ("Dane Street") and the physicians it hired to render opinions. (ECF Nos. 23 at 2; 26 at 3–6.) Specifically, Defendant relied on the opinions of Dane Street's physicians, Marvin Friedlander, M.D. and Steven Milos, M.D., who concluded that Plaintiff's disability was due to a sickness, and therefore no lifetime benefits were payable.[1] (ECF Nos. 23 at 2; 26 at 3–6.) Plaintiff contends that Dr. Friedlander is a Medical Director of Dane Street and therefore not truly independent. (ECF No. 23 at 8.) Defendant disputes this contention, arguing that the title of "Medical Director" is simply a "generic term used by utilization review companies for doctors who review cases and is not Dane Street's terminology." (ECF No. 26 at 9; *see also* ECF No. 26-2 at 39–40.) Dr. Friedlander reportedly performed reviews for two referrals from Dane Street related to Defendant's insureds between 2018 and 2021, while Dr. Milos performed reviews for 739 referrals from Dane Street related to Defendant's insureds between 2018 and 2021. (ECF No. 38-1 at 2; *see also* ECF No. 23 at 10.)[2] Plaintiff contends that Dr. Milos' relationship with Dane Street was significant. (ECF No. 23 at 10.)

Plaintiff now seeks to compel discovery aimed at "uncovering [Defendant] and Dane Street's long-standing, ongoing and substantial relationship with each other, and Dane Street's long-standing, ongoing and substantial relationship with Dr. Friedlander and Dr. Milos." (*Id.* at 2.) Plaintiff argues the requested documents are necessary to support

---

[1] Defendant also relied on the opinion of Philip Lahey, M.D., who performed the on-site physician review for Plaintiff's claim. (ECF No. 26 at 3.) Dr. Lahey concurred with the opinions of Dr. Milos and Dr. Friedlander. (*Id.* at 4–6.)

[2] In a subsequent reply, Plaintiff represents that over an unspecified five-year period Dane Street retained Dr. Friedlander 2,191 times, and Dr. Milos 9,143 times, to perform medical reviews for Dane Street's clients (not limited to Defendant). (ECF No. 44 at 4.)

1  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and to
2  show that Defendant engaged in a biased investigation into Plaintiff's claim. (*Id.* at 6.)
3  Plaintiff claims the financial information he requests will show bias in the form of
4  "financial incentives to render opinions favorable to [Defendant]." (*Id.* at 9.) Plaintiff
5  contends that "where an expert physician or the third-party vendor who supplies that
6  physician, has a longstanding relationship with or receives substantial compensation from
7  an insurance carrier, and renders opinions in their favor, such evidence is important in
8  accessing their bias and credibility." (*Id.* at 10–11.)

9  Defendant opposes the requests at issue, arguing that Plaintiff seeks irrelevant,
10 overbroad, and burdensome information concerning Dane Street that is not probative of
11 bias. (ECF No. 26 at 2, 7.) Defendant contends that the "total amount paid to Dane Street
12 and the total number of reviews performed is of no consequence in the abstract" and
13 Plaintiff's arguments are "conclusory and speculative." (*Id.* at 2–3.) Defendant states that
14 it has already produced the amount of compensation paid to Dane Street for the medical
15 reviews performed on Plaintiff's claim and Plaintiff has deposed Dr. Friedlander and
16 Dr. Milos and will depose Dane Street's Rule Federal Rule of Civil Procedure 30(b)(6)
17 witness. (*Id.* at 7.)

18          2.    Good Faith and Fair Dealing Claim

19 Under California law, "[e]very contract imposes upon each party a duty of good faith
20 and fair dealing in its performance and its enforcement." *Carma Devs. (Cal.), Inc. v.*
21 *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992) (citation omitted). "The covenant of
22 good faith and fair dealing has 'particular application' to insurers because they are
23 'invested with a discretionary power affecting the rights of another.'" *Amadeo v. Principal*
24 *Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) (quoting *Carma Devs.*, 2 Cal. 4th
25 at 372). Under California law, to establish a breach of the implied covenant of good faith
26 and fair dealing, "a plaintiff must show: (1) benefits due under the policy were withheld;
27 and (2) the reason for withholding benefits was unreasonable or without proper cause."
28 *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins.*

*Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)). The reasonableness of an insurer's conduct is ordinarily a question of fact. *Amadeo*, 290 F.3d at 1161.

"Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (quoting *Love*, 221 Cal. App. 3d at 1151). "Where there is a genuine issue of an insurer's liability under a policy, a court can conclude that an insurer's actions in denying the claim were not unreasonable as a matter of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1010 (9th Cir. 2004) (citing *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001)). Though the existence of a "genuine dispute" will generally immunize an insurer from liability, a finding that an insurer's investigation of a claim was biased may preclude a finding that the insurer was engaged in a genuine dispute, even if the insurer advances expert opinions concerning its conduct. *Id.* An insurer's bias may be shown through the following factors: "(1) the insurer misrepresents the nature of the investigatory proceedings; (2) the insurer's employees lie during depositions or to an insured; (3) the insurer dishonestly selects experts; (4) the insurer's experts were unreasonable; or (5) the insurer fails to conduct a thorough investigation." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 823 (9th Cir. 2014) (citing *Guebara*, 237 F.3d at 996).

   3. <u>Analysis</u>

Where the outcome of a case may turn on the credibility of the parties' experts and when a court is presented with diametrically opposed expert reports, bias or prejudice of the experts becomes highly relevant. *See Coffou v. Life Ins. Co. of N. Am.*, No. CV-19-03120-PHX-DLR, 2020 WL 1502104, at *2 (D. Ariz. Mar. 11, 2020).[3] In the ERISA

---

[3] *See also Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 901 (9th Cir. 2016) (noting that a "conventional approach[] to discrediting the testimony of retained experts whose objectivity may be challenged . . . [includes] the number of times he or she has served as

context, "several district courts in this circuit have held that the mere fact that a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias." *Polnicky v. Liberty Life Assurance Co. of Bos.*, No. C 13-1478 SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 5, 2014) (collecting cases). Defendant cites several ERISA cases supporting this position. (ECF No. 26 at 7–8.) However, this is not an ERISA case, where discovery is more limited. *See Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (explaining that on *de novo* review in an ERISA case extrinsic evidence may only be considered in "limited circumstances"). Rather, the Court is applying the Rule 26 standard.

In cases where an expert or the third-party vendor who supplies that expert has a long-standing relationship with, or receives substantial compensation income from performing examinations for, a carrier or industry, and overwhelmingly renders opinions in their favor, courts have determined that such evidence may be relevant under Rule 26 to assessing that expert's bias and credibility. *See, e.g.*, *Brzezinski v. Allstate Ins. Co.*, No. 11-CV-2373-CAB (DHB), 2012 WL 12869522, at *7 (S.D. Cal. Aug. 28, 2012) (finding relevant discovery aimed at showing a biased relationship between an insurance company and their forensic expert in a breach of the implied covenant of good faith and fair dealing case); *Rogers v. U.S. Navy*, 223 F.R.D. 533, 535–36 (S.D. Cal. 2004) (finding discovery in a Federal Tort Claims Act case aimed at showing bias of the government's medical expert to be relevant and proportional to the extent it was sufficient to allow the plaintiff to effectively cross-examine the expert at trial regarding his opinions and the financial motive or bias that may have influenced those opinions); *Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) (noting in a personal injury case that "the fact that an expert witness may

---

an expert in support of a party and the amount of compensation received"); Fed. R. Civ. P. 26(a)(2)(B)(v)–(vi) (requiring retained experts to provide a written report containing, *inter alia*, "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case").

have a 20-year history of earning significant income testifying primarily as a witness for defendants, and an ongoing economic relationship with certain insurance companies, certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant . . . and placing it squarely within the scope of discovery authorized by Rule 26[]" (internal citations omitted)).[4]

Here, the Court finds that the information sought by Plaintiff is relevant under Rule 26.  Although not necessarily sufficient by itself to suggest an inherent conflict or bias, Plaintiff is entitled to the information, which he may seek to use alone or in conjunction with additional information, to make an argument for bias.[5]  The Court further finds the request, as modified by Plaintiff, to be proportional to the needs of the case.  To address any concerns regarding burden or privacy, Plaintiff has agreed to accept a declaration or affidavit under oath specifying "the total number of times (in yearly or monthly summaries) that [Defendant] hired Dane Street" and "the total dollar amount that [Defendant] paid to Dane Street from 2016–2021 (in yearly or monthly summaries) for services provided to [Defendant]."  (ECF No. 23 at 6.)  The existing Protective Order in this case should allay any confidentiality or privacy concerns.  (*See* ECF Nos. 23 at 6; 14.)

The Court further finds that the requested time frame is appropriate.  *See Silgan Containers v. Nat'l Union Fire Ins.*, No. C 09-05971 RS LB, 2011 WL 1058861, at *6–7

---

[4]     *cf. Demer*, 835 F.3d at 901–04 (finding in the ERISA context the fact that the defendant insurance company's independent physician consultants have performed a significant number of reviews for the defendant and have received significant compensation for their services raises the inference of a conflict of interest); *Nolan v. Heald Coll.*, 551 F.3d 1148, 1152, 1154 (9th Cir. 2009) (stating in the ERISA context that evidence an independent medical review company and its physicians received substantial work and monies from the defendant insurance company in the years preceding and including the plaintiff's benefits denial at least "permitted an inference" that the company and physicians were biased in favor of the insurer).

[5]     The Court notes that the information sought "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Defendant may argue against its admissibility before the District Judge.

(N.D. Cal. Mar. 23, 2011) (finding five years of financial information about expert witness services on behalf of insurance companies relevant to bias or prejudice to be appropriate); *Behler*, 199 F.R.D. at 562 (finding five years of financial information attributable to performing expert witness services on behalf of insurance companies to be appropriate). Defendant argues that the requests are overbroad, and Plaintiff should be limited to only 2020 and 2021, but Defendant fails to establish that producing the summaries for the greater time frame would be unduly burdensome. (*See* ECF No. 26 at 9.)

Accordingly, as set forth above, the Court **GRANTS** Plaintiff's motion to compel Defendant to provide further responses to Plaintiff's Request for Production of Documents, Set Three. (ECF No. 23.) Specifically, per the compromise offered by Plaintiff, Defendant shall produce information indicating the total number of times (in yearly or monthly summaries) that Defendant hired Dane Street and the total dollar amount that Defendant paid to Dane Street from 2016–2021 (in yearly or monthly summaries) for services provided to Defendant. No further production is required in response to these requests.

**B.     Motion to Compel Request for Production, Set Four (ECF No. 38)**

1.     Parties' Arguments

Pursuant to the Protective Order in this case, Defendant produced the Statement of Work, Dedicated Medical Officers Review Services ("SOW"), entered between Defendant and Dane Street. (ECF No. 38 at 4.) Plaintiff contends that the documents he seeks are all "referenced" in the SOW. (*Id.* at 2.) As Dr. Friedlander conducted a "Dedicated Medical Officer" review of Plaintiff's medical records for Dane Street, Plaintiff argues the requested documents are "relevant to determine whether Dr. Friedlander's review was conducted in accordance with [the SOW]," and what role the potential bias of Defendant, Dane Street, Dr. Friedlander, and Dr. Milos played in the allegedly wrongful determination that Plaintiff's disability was due to a sickness and not an accident. (*Id.*)

Plaintiff further argues that the documents he seeks, which he contends are "embedded" in the SOW, would reveal whether the checks and balances on Defendant and Dane Street were being followed. (*Id.* at 3.) Plaintiff notes that under Dane Street's

contracts with Defendant, Dane Street is required to conduct background checks on the medical reviewers it hires to make sure the physician reviewers have "no adverse action taken by a regulatory agency or licensing authority." (*Id.*) However, apparently unbeknownst to Defendant, Dr. Friedlander had his medical license suspended by the New Jersey State Board of Medical Examiners on November 24, 2014, "for a period of three (3) years [beginning on December 11, 2014], the entirety to be stayed and served as a period of probation."[6] (ECF 38-4 at 19; *see also* ECF Nos. 26 at 9; 26-2 at 28, 33–34; 38 at 9.)

Plaintiff further argues that it needs the requested documents, which include Dane Street's "Quality Assurance Tool," "Quality Assurance Standards," and "Monitoring and Outcome Reports," to learn how Defendant and Dane Street "conduct the business of physician reviews and information analysis." (ECF No. 38 at 3.) As opposed to a fishing expedition, Plaintiff argues its requests are narrowly tailored to the issue of whether Defendant conducted its claims investigation in bad faith. (*Id.*) Plaintiff contends the documents "go to the bad faith of [Defendant] (by hiring Dane Street) in obtaining and offering medical opinions that are biased or not supported by the facts, but written to support a denial." (*Id.*) Plaintiff argues that Defendant's boilerplate objections are improper and should be stricken. (*Id.* at 5–7.)

In its opposition, Defendant argues that Plaintiff seeks "irrelevant, overbroad and non-proportional discovery pertaining to certain purported reports that are referenced in the Pilot Services Agreement entered into with Dane Street[.]" (ECF No. 42 at 7.)[7] Defendant contends that the requested documents are not attached to, nor part of, the Pilot Services Agreement and argues that Plaintiff is speculating as to their relevance. (*Id.*) Defendant further argues that "Plaintiff is trying to manufacture bias" and has not met his burden of demonstrating how the requested documents are relevant to bias. (*Id.* at 7–8.)

---

[6]   Defendant referred Plaintiff's file to Dr. Friedlander on or about May 14, 2021. (ECF No. 38 at 8–9.)

[7]   The SOW is part of the Pilot Services Agreement. (*Id.*)

Specifically, Defendant argues that Plaintiff has made no effort to describe the context of these terms or documents and demonstrate how they are relevant to bias. (*Id.* at 8–9.)

Defendant notes that Plaintiff has already taken the depositions of Defendant's claims examiner and Rule 30(b)(6) witness on Plaintiff's claim, as well as the depositions of Dr. Lahey, Dr. Friedlander, and Dr. Milos. (*Id.* at 2–3, 10.) Defendant has further provided the Dane Street invoices for the work performed on Plaintiff's claim, as well as Dane Street contract documents. (*Id.* at 3, 9.) Plaintiff has also noticed the deposition of Dane Street's Rule 30(b)(6) witness and received documents from Dane Street's subpoena production. (*Id.* at 9–10.)

2. <u>Analysis</u>

As set forth above, evidence of bias is relevant to Plaintiff's breach of the implied covenant of good faith and fair dealing claim. However, Plaintiff has not established the relevance to his claim of the documents requested in RFP Nos. 58, 59, 67, 68, and 76. Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). Plaintiff asks the Court to strike Defendant's "boilerplate" objections, which include relevance, but Plaintiff does not first establish the relevance of Defendant's "Quality Assurance Tool," "Quality Assurance Standards," "monthly monitoring reports," "issues and Outcome Reports," and "UNUM Companies Supplier Reports." (*See* ECF No 38-3.)

"The party seeking to compel discovery has the burden of establishing relevance." *Petconnect Rescue, Inc. v. Salinas*, No. 20-CV-00527-LL-DEB, 2022 WL 1322854, at *2 (S.D. Cal. May 3, 2022) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). Only once the propounding party establishes that the requests at issue seek relevant and proportional information, does the burden shift to the party resisting discovery to show that discovery should not be allowed, and clarify, explain, and support its objections. *Cancino Castellar v. McAleenan*, No. 17-cv-491-BAS-AHG, 2020 WL 1332485, at *4 (S.D. Cal. Mar. 23, 2020) (citation omitted).

///

Here, Plaintiff does not indicate what type of information is included in the requested documents and the relevance of such information. Plaintiff simply argues that the documents are relevant because they are "all referenced in the [SOW]" and, based on Plaintiff's current knowledge, address "how [Defendant] and Dane Street conduct the business of physician reviews and information analysis." (ECF No. 38 at 2–3.) Plaintiff does not provide the context of these items in the SOW, nor does Plaintiff explain how that context demonstrates the relevance of the documents to determining whether Dane Street was biased in its medical evaluations. For example, Defendant states that the "issues and outcome report" refers to "completed inventory." (ECF No. 42 at 9.) The parties purportedly engaged in meet and confer efforts during which Plaintiff learned this information, but Plaintiff does not address why completed inventory reports are relevant to establishing bias. Moreover, Defendant states that the term "Quality Assurance Standards" is not defined in the Pilot Services Agreement and the term "monthly monitoring report"[8] does not even appear. (*Id.*)

Plaintiff further argues that the information is relevant to determining whether Dr. Friedlander's review was conducted in accordance with the SOW. (ECF No. 38 at 2.) However, Plaintiff does not adequately explain how the requested documents set a standard or would show whether Dr. Friedlander complied with such standards. According to Defendant, the requested documents are not attached to, nor part of, the SOW, which would

---

[8]   In his motion, Plaintiff states that the term "monitoring reports" is identified and/or used in the SOW. (ECF No. 38 at 6.) Defendant states that the terms "monthly monitoring report," "monthly monitoring," and "monitoring report" do not appear in the Pilot Services Agreement, including the SOW. (ECF No. 42 at 9.) The Court cannot resolve this dispute as no party submitted a copy of the SOW. However, as noted above, it is Plaintiff's burden to establish relevance. *See Petconnect Rescue, Inc.*, 2022 WL 1322854, at *2. Despite having the burden of proof, Plaintiff opted against providing the SOW to the Court or quoting from it.

suggest that they do not contain standards Dr. Friedlander was required to meet. (ECF No. 42 at 7.)[9]

In sum, Plaintiff has the burden of proof as to relevance and ultimately failed to provide the Court with the information and arguments necessary to sustain that burden of proof as to the requested documents. For the foregoing reasons, the Court **DENIES** Plaintiff's motion to compel Defendant to provide further responses to Plaintiff's Request for Production of Documents, Set Four. (ECF No. 38.)

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to compel Defendant to provide further responses to Plaintiff's Request for Production of Documents, Set Three (ECF No. 23) is **GRANTED**, as set forth above. Defendant shall produce information indicating the total number of times (in yearly or monthly summaries) that Defendant hired Dane Street and the total dollar amount that Defendant paid to Dane Street from 2016–2021 (in yearly or monthly summaries) for services provided to Defendant <u>within seven (7) days of the date of this Order</u>. Defendant shall produce the information subject to the Protective Order (ECF No. 14) in this case.

2. Plaintiff's motion to compel Defendant to provide further responses to Plaintiff's Request for Production of Documents, Set Four (ECF No. 38) is **DENIED**.

Dated: June 15, 2023

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[9] In his reply, Plaintiff provides little clarity. (ECF No. 44.) Plaintiff simply argues that "claims manuals, standards and guidelines" are relevant in bad faith disputes and asserts without further explanation or analysis that the requested documents set the standard that Dane Street and Dr. Friedlander were required to follow. (*Id.* at 2–3.)