1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  RICHARD J. LEUNG, MD,                    Case No.:  22-cv-00767-W-JLB

12                              Plaintiff,   ORDER GRANTING IN PART AND
                                             DENYING IN PART PLAINTIFF'S
13  v.                                       MOTION TO COMPEL FURTHER
                                             RESPONSES TO PLAINTIFF'S
14  UNUM LIFE INSURANCE COMPANY              REQUEST FOR PRODUCTION OF
    OF AMERICA,                              DOCUMENTS (SET FOUR);
15                                           PLAINTIFF'S SPECIAL
                                             INTERROGATORIES (SET TWO);
16                              Defendant.   AND PLAINTIFF'S REQUESTS FOR
                                             ADMISSION (SET ONE) FROM
17                                           UNUM LIFE INSURANCE COMPANY
                                             OF AMERICA
18

19

20

21                                           [ECF No. 41]

22

23        Before the Court is a motion to compel filed by Plaintiff Richard J. Leung, M.D.

24  ("Plaintiff").  (ECF No. 41.)  Plaintiff seeks to compel Defendant Unum Life Insurance

25  Company of America ("Defendant") to provide further responses to (1) Plaintiff's Requests

26  for Production of Documents, Set Four, (2) Plaintiff's Special Interrogatories, Set Two,

27  and (3) Plaintiff's Requests for Admission, Set One.  (ECF No. 41.)  Defendant filed an

28  opposition.  (ECF No. 43.)

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel.

## I.   BACKGROUND

This lawsuit arises from a dispute over benefits under several disability income insurance policies Defendant issued to Plaintiff, who claims to be totally disabled as of May 2020 due to purported accidents occurring as far back as 1982.  (ECF No. 1-3 at 2–11 ("Compl.") at ¶¶ 1–3, 30–32, 38; *see also* ECF No. 26 at 2.)  Under Plaintiff's policies, benefits are payable to up to the longer of 24 months or age 65 for disabilities due to sickness, and for an insured's lifetime for disabilities due to accident if disability starts prior to the age 65 policy anniversary.  (ECF No. 26 at 2.)  Plaintiff, prior to his 65th birthday, submitted a claim to Defendant, contending his disability resulted from accidents which caused pain, numbness, and loss of mobility in his lumbar and cervical spine.  (*Id.*; *see also* Compl. ¶ 31.)  Defendant determined Plaintiff's claim was due to sickness and paid the maximum benefits for 24 months.  (ECF No. 26 at 2; *see also* Compl. ¶¶ 5, 34, 39.)  In his Complaint, Plaintiff brings claims against Defendant for breach of contract and breach of the implied covenant of good faith and fair dealing, disputing Defendant's claim determination.  (Compl. at 7–10.)  Plaintiff maintains he is totally disabled due to accidents and entitled to continued benefits for his lifetime.  (*Id.*)

In his motion, Plaintiff seeks to compel further responses to: (1) Requests for Production ("RFP") Nos. 55 and 56 in Plaintiff's Requests for Production, Set Four; (2) Special Interrogatories Nos. 15, 16, and 17 in Plaintiff's Special Interrogatories, Set Two; and (3) Requests for Admission ("RFA") Nos. 2, 3, and 4 in Plaintiff's Requests for Admissions, Set One.  (ECF No. 41 at 3–5.)  The requests at issue and responses thereto are as follows:

**RFA No. 2:** Admit that the ALBERTSTONE's REPORT has not been reviewed or analyzed by UNUM.

**Response:** Defendant objects to this request on the following grounds: (1) it is vague, ambiguous, and unintelligible, particularly as to "reviewed or

analyzed" and "UNUM"; (2) it is overbroad as to "UNUM"; and (3) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privileges.   Subject to and without waiving the foregoing objections, Defendant is unable to admit or deny the request given the broad definition of "UNUM," which is defined as "Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, and all present and former agents, divisions, subsidiaries, successors and assigns, officers, directors, employees, investigators, consultants, advisors, accountants, attorneys, and all other persons or entities acting on behalf of UNUM LIFE INSURANCE COMPANY OF AMERICA"). The request invades the attorney-client and/or attorney work product privileges and is vague and ambiguous and overbroad as phrased.

**RFA No. 3:** Admit that the ALBERSTONE REPORT has not been added to the UNUM claim file.

**Response:** Defendant objects to this request on the following grounds: (1) it is vague, ambiguous, and unintelligible, particularly as to "UNUM"; (2) it is overbroad as to "UNUM"; (3) it seeks information that is not relevant to the subject matter of this litigation; and (4) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privilege.

**RFA No. 4:** Admit that YOU evaluated the ALBERSTONE REPORT as part of your ongoing duty to evaluate the Plaintiff Richard Leung, M.D.'s claim for benefits at issue in this litigation.

**Response:** Defendant objects to this request on the following grounds: (1) it is vague, ambiguous, and unintelligible, particularly as to "YOU" and "as part of your ongoing duty to evaluate"; (2) it is overbroad as to "YOU"; (3) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privilege; and (4) it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Defendant is unable to admit or deny the request given the broad definition of "YOU," which is defined as "Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, and all present and former agents, divisions, subsidiaries, successors and assigns, officers, directors, employees, investigators, consultants, advisors, accountants, attorneys, and all other persons or entities acting on behalf of UNUM LIFE INSURANCE COMPANY OF AMERICA."   The request invades the attorney-client and/or attorney work product privileges and is vague and ambiguous and overbroad as phrased.

(ECF No. 41-4.)

**Special Interrogatory No. 15:** Identify the date the ALBERSTONE REPORT was made part of UNUM's claim file in this matter.

**Response:** Defendant objects to this request on the following grounds: (1) it is vague, ambiguous, and unintelligible, particularly as to "UNUM" and "as part of UNUM's claim file"; (2) it is overbroad as to "UNUM"; and (3) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privileges.

**Special Interrogatory No. 16:** Identify all DOCUMENTS that have been added to the UNUM claim file in this matter from February 17, 2022 to the present.

**Response:** Defendant incorporates its general objections herein and further objects to this request on the following grounds: (1) to the extent Plaintiff attempts to define the nature and scope of the information contained in Defendant's claim file; (2) it is overly broad and unduly burdensome; (3) to the extent it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action; (4) to the extent it seeks documents that constitute or contain confidential and/or proprietary information; and (5) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privileges.

**Special Interrogatory No. 17:** If YOUR response to any of the concurrently served Requests for Admissions are anything other than an unqualified admission, state all facts upon which YOU base YOUR response and identify all DOCUMENTS and witnesses upon which YOU base YOUR response.

**Response:** Defendant incorporates its general objections herein, the objections in its responses to Plaintiff's Requests for Admissions (Set One), and further objects to this request on the following grounds: (1) it is compound; (2) it is overly broad and unduly burdensome; (3) it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action nor is proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues; (4) to the extent it seeks documents that constitute or contain confidential and/or proprietary information; and (5) it seeks information protected by the attorney-client privilege, work product doctrine, and litigation privileges.

Subject to and without waiving the foregoing objections, Defendant responds as follows:

Request for Admission No. 1 – "Admit that YOU do not have any DOCUMENT(s) that identify and/or list which DOCUMENTS YOU provided to Dane Street, LLC regarding Dr. Leung." Defendant denies that documents do not exist that identify documents provided to Dane Street, LLC pertaining to Dr. Leung's claim. Defendant refers Plaintiff to the claim file produced in this action, including the medical reviews from Steven Milos, M.D. and Marvin Friedlander, M.D. which identify documents that Unum provided to Dane Street that are identified or discussed in their reports. Defendant refers Plaintiff to Dane Street for a list of all documents provided to Drs. Milos and Friedlander pertaining to Plaintiff's claim to the extent such a list exists that Dane Street is able to produce.

Request for Admission No. 2 – "Admit that the ALBERTSTONE's REPORT has not been reviewed or analyzed by UNUM" - Defendant is unable to admit or deny the request given the broad definition of "UNUM," which is defined as "Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, and all present and former agents, divisions, subsidiaries, successors and assigns, officers, directors, employees, investigators, consultants, advisors, accountants, attorneys, and all other persons or entities acting on behalf of UNUM LIFE INSURANCE COMPANY OF AMERICA"). The request invades the attorney-client and/or attorney work product privileges and is vague and ambiguous and overbroad as phrased.

Request for Admission No. 3 – "Admit that the ALBERSTONE REPORT has not been added to the UNUM claim file." The request invades the attorney-client and/or attorney work product privileges and is vague and ambiguous and overbroad as phrased.

Request for Admission No. 4 – "Admit that YOU evaluated the ALBERSTONE REPORT as part of your ongoing duty to evaluate the Plaintiff Richard Leung, M.D.'s claim for benefits at issue in this litigation." - Defendant is unable to admit or deny the request given the broad definition of "YOU," which is defined as "Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, and all present and former agents, divisions, subsidiaries, successors and assigns, officers, directors, employees, investigators, consultants, advisors, accountants, attorneys, and all other persons or entities acting on behalf of UNUM LIFE INSURANCE COMPANY OF AMERICA." The request invades the attorney-client and/or attorney work product privileges and is vague and ambiguous and overbroad as phrased.

(ECF No. 41-3.)

**RFP No. 55:** Produce all DOCUMENTS that have been added to the UNUM claim file from February 17, 2022, to the present.

**Response:** Defendant incorporates its general objections herein and further objects to this request on the following grounds: (1) to the extent Plaintiff attempts to define the nature and scope of the information contained in Defendant's claim file; (2) it is overly broad; (3) to the extent it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence; (4) to the extent it seeks documents that constitute or contain confidential and/or proprietary information; and (5) it seeks information protected by the attorney-client and/or attorney work product privileges.

**RFP No. 56:** If YOUR response to any of the concurrently served Request for Admissions served simultaneously with these Requests for Production, is anything other than an unqualified admission, produce all DOCUMENTS that support YOUR response.

**Response:** Defendant incorporates its general objections herein, the objections in its responses to Plaintiff's Requests for Admissions (Set One), and further objects to this request on the following grounds: (1) it is compound; (2) it is overly broad and unduly burdensome; (3) it seeks information/documents which is/are not relevant to the claims or defenses of any party to this action nor is proportional to the needs of the case pursuant to FRCP 26(b)(1) considering the amount in controversy, the importance of the issues at stake in the action, and the importance of the discovery sought in resolving the issues; (4) to the extent it seeks documents that constitute or contain confidential and/or proprietary information; and (5) it seeks information protected by the attorney-client and/or attorney work product privileges.

Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant refers Plaintiff to the claim file produced in this action, including the medical reviews from Steven Milos, M.D. and Marvin Friedlander, M.D. which identify documents that Unum provided to Dane Street that are identified or discussed in their reports. Defendant refers Plaintiff to Dane Street for a list of all documents provided to Drs. Milos and Friedlander pertaining to Plaintiff's claim to the extent such a list exists that Dane Street is able to produce.

(ECF No. 41-2.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery of any nonprivileged information discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1), as amended in 2015, provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id*.

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery.  *Id*.  The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation."  Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment; *see also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017).  The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  *Id*.

Pursuant to Federal Rule of Civil Procedure 33, a party may serve an interrogatory on another party relating to any matter that may be inquired into under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  Pursuant to Federal Rule of Civil Procedure 34, a party may request the production of documents from another party within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).  Lastly, pursuant to Federal Rule of Civil Procedure 36, a party may serve on another party a written request to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either; and . . . the genuineness of any describe documents."  Fed. R. Civ. P. 36(a)(1)(A)–(B).  If a party fails to answer an interrogatory pursuant to Rule 33 or fails to produce documents pursuant to Rule 34, the propounding party may bring a motion to compel.  *See* Fed. R. Civ. P. 37(a).  The propounding party may also move under Rule 36 "to determine the sufficiency of an answer or objection."  Fed. R. Civ. P. 36(a)(6).

## III.   DISCUSSION

### A.   Parties' Arguments

Plaintiff claims that he has continued to produce evidence supporting his disability claim since the filing of this case.  (ECF No. 41 at 2.)  Through discovery in this case, including Plaintiff's Rule 26 disclosures, Plaintiff has produced thousands of documents, including updated medical records and Social Security Administration records, as well as documents from the Department of Workers' Compensation and Labor.  (*Id.*)  On August 15, 2022, Plaintiff also submitted to defense counsel a report from neurosurgeon Dr. Carey Alberstone, dated August 9, 2022.  (*Id.*)  Plaintiff argues that the discovery at issue in the present motion is aimed at determining whether these documents have been included in Plaintiff's claim file, and if so, what actions, if any, Defendant and its claims handlers have taken regarding this new information.  (*Id.* at 3.)  Plaintiff contends this information is relevant to the determination of whether Defendant violated its ongoing duty of good faith and fair dealing and to the determination of punitive damages.  (*Id.* at 6–7.)

In opposition, Defendant argues that the discovery seeks "irrelevant and privileged post-litigation communications and activity."  (ECF No. 43 at 2.)  Defendant contends that

"when a claim has been closed by an insurer and the claimant has chosen to file a lawsuit, the ongoing duty of good faith and fair dealing may be satisfied through the process of litigation, including discovery, investigation, [and the] retention of experts[.]"  (*Id.*) Defendant argues that "[t]here is no obligation for a claim that is being litigated to proceed on two different tracks—by a claims representative and in litigation by counsel."  (*Id.*) Lastly, Defendant argues that Plaintiff's discovery is "moot and cumulative" as Plaintiff has already had an opportunity to address the issues in discovery.  (*Id.* at 3.)  Defendant states that "Plaintiff asked these questions in deposition and his retained insurance expert has already rendered opinions with the understanding that Dr. Alberstone's report and additional other records obtained in discovery were not reviewed post-litigation by [Defendant's] claim personnel."  (*Id.*)

### B.   Legal Standards

#### 1.   Implied Covenant of Good Faith and Fair Dealing

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing.  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007).  "A breach of the implied covenant of good faith and fair dealing involves something beyond the breach of the contractual duty itself, and it has been held that bad faith implies unfair dealing rather than mistaken judgment."  *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (internal quotations and citation omitted).  "Thus, an insurer's bad judgment or negligence is insufficient to establish bad faith; instead, the insurer must engage in a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 86 (2010) (citation and internal quotation marks omitted).

To establish bad faith, a plaintiff must demonstrate that the insurer "acted *unreasonably* or *without proper cause*."  *Chateau Chamberay*, 90 Cal. App. 4th at 347. "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the

time that they were made; the evaluation cannot fairly be made in the light of subsequent events that may provide evidence of the insurer's errors." *Id.*; *see also Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007) (citation and internal quotation marks omitted) ("[I]n evaluating a genuine dispute, it is essential that no hindsight test be applied.").

"[W]here there is a *genuine issue* as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." *Id.* (citations omitted). In other words, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Id.* (citing *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000)).

In contrast, "where an insurer denies coverage[,] but a *reasonable investigation* would have disclosed facts showing the claim was covered, the insurer's failure to investigate breaches its implied covenant." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1074 (2007). "The insurer cannot claim a 'genuine dispute' regarding coverage in such cases because, by failing to investigate, it has deprived itself of the ability to make a fair evaluation of the claim." *Id.* (citation omitted).

Accordingly, in a bad faith claim based on a failure to investigate, "it is essential that an insurer fully inquire into possible bases that might support the insured's claim before denying it." *Wilson*, 42 Cal. 4th at 721 (internal quotation marks omitted) (quoting *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979)). "A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim." *Id.* (quoting *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996)); *see also Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 880 (2000) (an "insurer's early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith").

In a bad faith action, punitive damages are available "if in addition to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 319 (1999); *see also Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1164 (9th Cir. 2002); Cal. Civ. Code § 3294(a). An insurer's "careless disregard for the rights of its insured and an obstinate persistence in an ill-advised initial position . . . might conceivably support" an award of punitive damages. *Shade Foods, Inc.*, 78 Cal. App. 4th at 892.

### 2. Attorney-Client Privilege

California law governs the attorney-client-privilege issue in this diversity case. *See Star Ed., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993); Fed. R. Evid. 501. The privilege protects "confidential communication[s] between client and lawyer." Cal. Evid. Code § 954. "If a 'confidential communication between client and lawyer' exists, the client has a privilege protecting disclosure, and the attorney has an obligation to refuse disclosure unless otherwise instructed by the client." *Scripps Health v. Super. Ct.*, 109 Cal. App. 4th 529, 533 (2003) (internal citations omitted).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 733 (2009). Once these foundational facts have been presented, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential, or that an exception exists." *State Farm Fire & Cas. Co. v. Super. Ct.*, 54 Cal. App. 4th 625, 639 (1997) (citations and internal quotation marks omitted); Cal. Evid. Code § 917(a).

The attorney-client privilege "only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." *State Farm Fire & Cas. Co.*, 54 Cal. App.

4th at 639.  For example, it would not be a violation of the attorney-client privilege to divulge that certain documents exist, but "to divulge a conversation to that effect or the fact that such information had been delivered to an attorney, would violate the privilege."  *Id*. (citing *People v. Lee*, 3 Cal. App. 3d 514, 526 (1970) (". . . the fact that the client delivered . . . evidence to his attorney may be privileged, the physical object [or information] itself does not become privileged merely by reason of its transmission to the attorney")).  In addition, the privilege does not protect independent facts related to a communication, *i.e.*, "that a communication took place, and the time, date and participants in the communication."  *Id.*

## C.   Analysis

Defendant issued its final decision on Plaintiff's claim, after several appeals, on September 23, 2021.  (ECF No. 43 at 5.)  On February 17, 2022, Plaintiff requested further appeal based on new MRI scans, dated December 15, 2021, and U.S. Department of Labor documents.  (Compl. ¶44.)  On February 18, 2022, Defendant advised Plaintiff that it had declined his request for another appeal review of its claim determination.  (*Id.* ¶45.)  Thereafter, this action was commenced in California state court on April 25, 2022.[1]

Plaintiff claims he has continued to produce extensive evidence supporting his disability claim since the filing of this case through the mechanisms of Rule 26 disclosures and discovery.  (ECF No. 41 at 2.)  Plaintiff contends that the discovery at issue in the present motion is aimed at determining whether these documents have been included in Plaintiff's claim file, and if so, what actions, if any, Defendant and its claims handlers have taken regarding this new information.  (*Id.* at 3.)  Plaintiff argues that this information is

---

[1]    Defendant's retained expert indicates that Plaintiff's claim was officially "closed" on June 28, 2022.  (*See* ECF No. 43-4 at 4.)  The expert contends that "once the claimant decides to pursue a decision from a court of competent jurisdiction it is not industry practice or appropriate for the claim department to reopen a closed claim and to actively manage a closed claim that is the subject of litigation."  (*Id.*)

relevant to determining whether Defendant has met its continuing duty of good faith and fair dealing and whether punitive damages are appropriate. (*Id.* at 6–7.)

There is no dispute that documents evidencing Defendant's handling of Plaintiff's claim prior to the initiation of this lawsuit are relevant, *see 2,022 Ranch, LLC v. Super. Ct.*, 113 Cal. App. 4th 1377, 1396 (2003), *disapproved of on other grounds by Costco Wholesale Corp.*, 47 Cal. 4th at 739 (noting the "importance of claims files as evidence in bad faith actions" because they are "a unique, contemporaneously prepared history of the company's handling of the claim"), or that Defendant has produced Plaintiff's claim file in this litigation (ECF Nos. 41-3 at 6 (referring Plaintiff to the claim file produced in this action); 43-5 at 3 (Plaintiff's expert reviewed the claim file)).

The question before the Court is whether Plaintiff is entitled to certain discovery regarding Defendant's investigation into Plaintiff's claim after the commencement of litigation. Defendant states that it is continually assessing the information gathered during discovery in this litigation. (ECF No. 43 at 2.) Defendant further states that it is currently investigating Plaintiff's claim "through the discovery process." (*Id.* at 7.) If its investigation during litigation warrants a change in course, Defendant represents that it could overturn an adverse decision "through this [litigation] process." (*Id.* at 8.) Thus, Defendant argues it is satisfying its ongoing duty of good faith and fair dealing through the process of litigation. (*Id.*) Defendant further argues that Plaintiff requests privileged information as he seeks Defendant's privileged review of information produced in this lawsuit and communications between Defendant's in-house and outside counsel. (*Id.* at 7–9.) The Court will address each discovery request at issue below.

1.  RFA No. 2

In RFA No. 2, Plaintiff asks Defendant to admit that the Alberstone Report, which was produced in this litigation, has not been reviewed or analyzed by "UNUM." (*See* ECF Nos. 41-4; 43 at 7, n. 2.) Plaintiff initially defined "YOU", "YOUR", or "UNUM" to mean Defendant Unum Life Insurance Company of America, and all present and former agents, divisions, subsidiaries, successors and assigns, officers, directors, employees,

investigators, consultants, advisors, accountants, *attorneys*, and all other persons or entities acting on behalf of Defendant Unum Life Insurance Company of America. (*See* ECF No. 43 at 6 n.1.) However, Plaintiff subsequently narrowed his discovery requests, including the definitions of "YOU", "YOUR", and "UNUM," to state that he is not seeking attorney-client privileged or attorney work product documents or information. (*Id.* at 7.)[2]

In light of this narrowing, Plaintiff contends that he is not asking Defendant to divulge or produce attorney-client privileged communications or documents and/or attorney work product. (ECF No. 41 at 3.) Rather, Plaintiff claims he is only asking Defendant to confirm or deny "that the subsequently obtained documents were made part of [Plaintiff's] claim file, that they either [] have or have not been reviewed by [Defendant] and/or its claims handlers, and, if they have been reviewed, that [Defendant] produce any claim notes from [Defendant's] claim handlers, or other responsive non-privileged documents, regarding the additional documents." (*Id.*) Plaintiff contends that such discovery is not privileged.

In support of this contention, Plaintiff cites *2,002 Ranch*. (*Id.*)[3] In *2,022 Ranch*, a California Court of Appeal held that evidence reflecting the factual investigation of an insured's claim, even if done by the insurance company's in-house attorneys, was not

---

[2]     Given this clarification, the Court assumes for purposes of this Order that Plaintiff no longer defines "YOU", "YOUR", and "UNUM" to include outside counsel.

[3]     It is not entirely clear for what proposition Plaintiff cites to *2,002 Ranch*. The pin cite he uses would seem to point the Court to language in support of the uncontroversial proposition that the claims file is highly relevant in any insurance bad faith case against a carrier. *2,002 Ranch*, 113 Cal. App. 4th at 1396. However, Plaintiff's citation to the *2,002 Ranch* case follows his broader, and more specific, assertion that the court should grant his request and compel Defendant to "confirm or deny that the subsequently obtained documents were made part of Dr. Leung's claim file, that they either [] have or have not been reviewed by Unum and/or its claims handlers, and, if they have been reviewed, that Unum produce any claim notes from the Unum claim handlers, or other responsive non-privileged documents, regarding the additional documents." (ECF No. 41 at 3.) The following discussion assumes that Plaintiff is relying on *2,002 Ranch* decision for this more specific proposition.

privileged, as the attorneys were serving as claim adjusters in performing the investigation. *2,002 Ranch*, 113 Cal. App. 4th at 1397–98. The court also held that communications by the attorneys that reflected the rendering of legal advice were attorney-client privileged. *Id.* at 1397. The court ultimately ordered the trial court to review each of the communications to determine their dominant purpose. *Id.*

However, the California Supreme Court in *Costco Wholesale Corp.* disapproved of *2,022 Ranch*, in part. The *Costco Wholesale Corp.* court found that the *2,022 Ranch* court erred in distinguishing between communications reporting the results of factual investigations and those reflecting the rendering of legal advice and in requiring the trial court to review each communication to determine its dominant purpose. *Costco Wholesale Corp.*, 47 Cal. 4th at 739. The *Costco Wholesale Corp.* court held that the "proper procedure would have been for the trial court first to determine the dominant purpose of *the relationship* between the insurance company and its attorneys, i.e., was it one of attorney-client or one of claims adjuster-insurance corporation[.]" *Id.* at 739–40. "If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Id.* at 740.

Here, there does not appear to be any dispute that once Defendant retained outside counsel for purposes of this litigation, an attorney-client relationship was established. *See 2,002 Ranch*, 113 Cal. App. 4th at 1398 ("The hiring of outside counsel for a specific project usually indicates that a client is seeking legal advice."). As such, the attorney-client privilege attaches to all confidential communications between Defendant and its outside counsel and bars discovery of communications between them, irrespective of whether the communications include unprivileged material. *See Costco Wholesale Corp.*, 47 Cal. 4th at 734. In California, the attorney-client privilege "encompass[es] not only oral or written statements, but additionally actions, signs, or other means of communicating information." *Mitchell v. Super. Ct.*, 37 Cal. 3d 591, 600 (1984). In this regard, the privilege covers the

"actual fact of [] transmission" since discovery of a transmission "might very well reveal the transmitter's intended strategy." *Id.*

With respect to RFA No. 2, Plaintiff claims he provided Dr. Alberstone's report to outside defense counsel as part of this litigation for further transmission to Defendant. (ECF No. 41 at 2.)  However, RFA No. 2 presupposes that outside defense counsel did provide Dr. Alberstone's report to Defendant as part of this litigation, which would be a privileged communication in the course of an attorney-client relationship.  *See Mitchell*, 37 Cal. 3d at 600 (the attorney-client privilege encompasses "actions, signs, or other means of communicating information," including the fact of transmission); *see also Wellpoint Health Networks, Inc. v. Super. Ct.*, 59 Cal. App. 4th 110, 119 (1997) ("The attorney-client privilege covers all forms of communication, including the transmission of specific documents, so a party should not ordinarily formulate a discovery request seeking 'all documents transmitted to responding party's attorney.'" (internal citation omitted)).  The RFA also asks whether Dr. Alberstone's report has been "reviewed or analyzed" by Defendant.  As Defendant has closed Plaintiff's claim file and has asserted that it is reevaluating its position on Plaintiff's claim through litigation, it follows that a claims analyst or other employee of Defendant would only review or not review the report on the advice of outside counsel.  Thus, the request implicitly seeks the legal advice given by outside counsel to Defendant's employees.  *See Costco Wholesale Corp.*, 47 Cal. 4th at 733 (the attorney-client privilege "attaches to any legal advice given in the course of an attorney-client relationship").

Through this RFA, and the other discovery requests at issue here, Plaintiff is not seeking to discover the unknown contents of documents in the possession of Defendant. Instead, Plaintiff largely knows the contents of the documents he seeks to have identified and then obtain—Plaintiff himself produced those documents in discovery.  Instead, Plaintiff is seeking to learn whether or not outside counsel transmitted those documents to Defendant, and what Defendant then did with those documents which, under the factual circumstances of this case, would necessarily reflect the legal advice of outside counsel.

16

1    Accordingly, the Court denies the motion to compel further response to this RFA.

2        2.    RFA No. 3

3    In RFA No. 3, Plaintiff asks Defendant to admit that the Alberstone Report, which

4    was produced in this litigation, has not been added to Defendant's claim file.  (*See* ECF

5    No. 41-4.)  As discussed above, Dr. Alberstone's report was produced to outside defense

6    counsel in this litigation.  Thus, this RFA is seeking information regarding what outside

7    defense counsel did with that report and assumes outside defense counsel provided

8    Dr. Alberstone's report to Defendant during litigation, which would be a privileged

9    communication in the course of an attorney-client relationship.  *See Mitchell*, 37 Cal. 3d at

10   600.

11       The Court recognizes the significance of the claim file in bad faith insurance

12   litigation,[4] but "the reasonableness of the insurer's decisions and actions must be evaluated

13   as of the time that they were made."  *Chateau Chamberay*, 90 Cal. App. 4th at 347.  The

14   reasonableness "evaluation cannot fairly be made in the light of subsequent events that may

15   provide evidence of the insurer's errors."  *Id.*; *see also Maynard*, 499 F. Supp. 2d at 1160

16   ("[I]n evaluating a genuine dispute, it is essential that no hindsight test be applied.").

17   Defendant made the decision to deny Plaintiff's claim prior to the commencement of

18   litigation.  As such, documents added to the claim file post-litigation have little to no

19   relevance to the determination of whether there was a "genuine dispute" at the time

20   Defendant denied Plaintiff's claim.

21       The Court further recognizes that an insurer's duty of good faith and fair dealing

22   continues post-litigation because the contractual relationship "does not terminate with

23   commencement of litigation."  *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 885 (1985).

24

25   _____

26   [4]    *See* Cal. Code Regs. tit. 10, § 2695.3 (requiring all insurers to maintain claims files);

27   *2,022 Ranch*, 113 Cal. App. 4th at 1396 (noting the "importance of claims files as evidence

28   in bad faith actions" because they are "a unique, contemporaneously prepared history of

     the company's handling of the claim").

However, Plaintiff has not established that Defendant cannot meet its ongoing duty through litigation or that there is any legal significance to Defendant physically or electronically adding discovery received through litigation to Plaintiff's claim file or that an independent claims analyst is the only person who can re-evaluate Plaintiff's claim in satisfaction of Defendant's ongoing duty.[5]  As such, even if this RFA did not seek privileged information, the Court finds that Plaintiff has not established the relevance of the information sought by this RFA.

For the foregoing reasons, the Court denies the motion to compel further response to this RFA.

   3. <u>RFA No. 4</u>

In RFA No. 4, Plaintiff asks Defendant to admit that "YOU" evaluated the Alberstone Report, which was produced in this litigation, as part of Defendant's ongoing duty to evaluate Plaintiff's claim for benefits at issue in this litigation. (*See* ECF No. 41-4.)  Assuming this request is asking whether an employee of Defendant (and not outside counsel) has evaluated the Alberstone Report, the Court finds the request improper for the reasons discussed above.  As Defendant has closed Plaintiff's claim file and has asserted that it is reevaluating its position on Plaintiff's claim through litigation, it follows that a claims analyst or other employee of Defendant would only evaluate or not evaluate the report on the advice of outside counsel.  Thus, the request implicitly seeks the legal advice given by outside counsel to Defendant's employees.  *See Costco Wholesale Corp.*, 47 Cal. 4th at 733.

With respect to this RFA (and others), the Court also shares the concerns espoused by the district court in *Genesis Ins. Co. v. Magma Design Automation, Inc.*, No. 5:06-cv-05526-EJD (HRL), 2016 WL 3057375 (N.D. Cal. May 31, 2016).  In *Genesis*, with a pending bad faith insurance claim, the insured sought the insurance company's claim file

---

[5] Although the duty to investigate continues post-litigation, case law does not establish what form the investigation must take.  *See Jordan*, 148 Cal. App. 4th at 1074–76 & n.7.

"for the very claim that [was] currently in litigation between them" to determine whether the insurance company was acting in bad faith during the litigation. *Id.* at *2–3. In denying a motion to compel post-litigation claims handling information, the court stated that "[a]s a litigant, [the insurance company] is entitled to its day in court, and [the insured] is asking this court to authorize a fishing expedition into the heart of the insurer's litigation strategy." *Id.* at *3. The court added that "the insurer has an absolute right to defend against its insured's claims, and opening up its litigation file to its insured would undermine its right to a fair day in court." *Id.*

For the foregoing reasons, the Court denies the motion to compel further response to this RFA.

### 4.   Special Interrogatories Nos. 15 and 16 and RFP No. 55

In Special Interrogatory No. 15, Plaintiff asks Defendant to identify the date the Alberstone Report was made part of "UNUM's claim file in this matter." (ECF No. 41-3.) In Special Interrogatory No. 16, Plaintiff asks Defendant to identify all documents that have been added to Plaintiff's "UNUM claim file" since February 17, 2022.[6] (*Id.*) In RFP No. 55, Plaintiff asks Defendant to produce all documents that have been added to the "UNUM claim file" since February 17, 2022. (ECF No. 41-2.)

As set forth above, the mere act of outside defense counsel transmitting certain documents and information produced in this litigation to Defendant for addition to Plaintiff's "UNUM claim file" is privileged. *See Mitchell*, 37 Cal. 3d at 600. Therefore, to the extent these requests seek to determine whether a certain document or piece of

---

[6]     On February 17, 2022, Plaintiff requested further appeal based on new MRI scans, dated December 15, 2021, and U.S. Department of Labor documents. (Compl. ¶44.) On February 18, 2022, Defendant advised Plaintiff that it had declined his request for another appeal review of its claim determination. (*Id.* ¶45.) Thereafter, this action was commenced in California state court on April 25, 2022. (ECF No. 1.). Plaintiff submitted the Alberstone Report to outside defense counsel on August 15, 2022, after the commencement of litigation. (ECF No. 41 at 2.)

information was added to Plaintiff's claim file during litigation at the direction of outside defense counsel, the Court finds that these requests seek information protected by the attorney-client privilege.[7]

For the foregoing reasons, the Court denies the motion to compel further response to these interrogatories and RFP.

### 5.   Special Interrogatory No. 17 and RFP No. 56

In Special Interrogatory No. 17, Plaintiff asks Defendant, for each RFA to which Defendant's response was anything other than an unqualified admission, to state all facts and identify all documents and witnesses, upon which it based its response.  (ECF No. 41-3.)  In RFP No. 56, Plaintiff asks Defendant, for each RFA to which Defendant's response was anything other than an unqualified admission, to produce all documents that support its response.  (ECF Nos. 41-2; 41-3.)  For the reasons stated above with respect to RFAs Nos. 2-4, the Court denies Plaintiff's motion to compel any further response to this interrogatory and RFP.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is **GRANTED IN PART** and **DENIED IN PART**.  Within fourteen (14) days of the date of this Order, if any documents that have not already been identified and produced by Defendant were added to Plaintiff's claim file prior to the initiation of Defendant's attorney-client relationship with outside counsel for purposes of this litigation, Defendant shall supplement its responses to Special Interrogatory No. 16 and RFP No. 55.  At the time of production, Defendant shall provide a privilege log pursuant to Rule 26(b)(5)(A) only with respect to any documents

---

[7]   With respect to Special Interrogatory No. 16 and RFP No. 55, the Court notes that these requests address the period of time from February 17, 2022, forward.  Plaintiff did not file suit until April 25, 2022.  To the extent any documents were added to the claim file after February 17, 2022, and prior to the initiation of the attorney-client relationship, those documents must be identified and produced by Defendant, if Defendant has not already done so.

or information responsive to Special Interrogatory No. 16 and RFP No. 55, as modified by the Court, which have been withheld.  Plaintiff's motion to compel is denied in all other respects.

**IT IS SO ORDERED.**

Dated:  June 23, 2023

Hon. Jill L. Burkhardt
United States Magistrate Judge