Daniel W. Maguire (SBN 120002)
E-mail:  dmaguire@bwslaw.com
Michael B. Bernacchi (SBN 163657)
E-mail:  mbernacchi@bwslaw.com
Keiko J. Kojima (SBN 206595)
E-mail:  kkojima@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600 | Fax:  213.236.2700

Attorneys for Defendant Unum Life
Insurance Company of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. LEUNG, MD,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA; and DOES 1 to 10, inclusive,<br><br>Defendant. | Case No. 3:22-cv-00767-W-JLB<br><br>**DECLARATION OF MICHAEL B. BERNACCHI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Motion for Summary Judgment; Declaration of Shannon Cartier; and [Proposed] Judgment]*<br><br>Date: September 18, 2023<br>Ctrm: 3C |

1.     I am an attorney at law, licensed to practice before all the Courts in the State of California, including this Honorable Court.  I am a Partner with the firm of Burke, Williams & Sorensen, LLP, attorneys of record for Defendant Unum Life Insurance Company of America (collectively "Defendant" or "Unum").  I have personal and first-hand knowledge of the facts set forth in this declaration, and if called upon as a witness, I could and would testify competently to them.

///

LA #4878-6313-6624 v1                                     1                   Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

2.     I have reviewed the file related to the disability claim submitted by Plaintiff Richard Leung, M.D. ("Leung" or "Plaintiff"), which is maintained in accordance with the normal business practices of Unum.  All of the records referenced in my declaration are taken from Leung's' file with Unum and/or are business records from third parties kept in the regular course of their business activity and it was the regular practice of that party's business activity to make the document.  The records from Unum have been authenticated by the accompanying declaration of Shannon Cartier, the custodian of records for the business that produced the document and/or at the deposition of Plaintiff or appropriate third parties.

3.     During the course of this litigation, I subpoenaed or obtained records from Dr. Leung's medical providers, insurers, worker's compensation carrier, employer as well as court records from legal actions Leung was involved in dating back to his to 1983.  These records reflect the following:

4.     In 1982 Leung was in medical school and performing his third-year rotation at the Veteran's Administration Hospital when he reported he injured his back while lifting a patient out of bed.  A true and correct copy of the original June 1982 incident report filed by Leung is attached hereto as **Exhibit 32**.  This record was produced by the United States Department of Labor as part of its worker's compensation file.  CT scans taken of Leung's spine shortly after the incident reflected congenital deformities (stenosis) in the lumbar/sacral spine areas as well as what appeared to be nerve route entrapment at L4-5 due to a herniated disc.  A true and correct copy of the September 14, 1982 CT scan report and a June 17, 1982 medical report describing an earlier CT scan taken in the summer of 1982 are attached hereto as **Exhibit 33**. These records were produced by the United States Department of Labor as part of its worker's compensation file.

5.     After conservative treatment failed, Leung was informed that he needed a laminectomy to address the congenital spinal stenosis.  His doctors were unsure if

the disc would also need to be resected until the operation was performed. A true and correct copy of the January 4, 1983 office note is attached hereto as **Exhibit 34**. This record was produced by the United States Department of Labor as part of its worker's compensation file.  The operation was performed on February 16, 1983. The pre-operative diagnosis was lumbar stenosis, and the post operative diagnosis was "same plus herniated intervertebral disk L4-L5 on the left." A true and correct copy of the operative report is attached hereto as **Exhibit 35**.  This record was produced by the United States Department of Labor as part of its worker's compensation file. The disc excision appeared to have been a success.  While the laminectomy also appeared to provide substantial relief for the congenital lumbar stenosis it was noted that Leung's spine was not completely decompressed due to pre-existing hypertrophied facets.  A true and correct copy of a January 14, 1982 letter from Leung's doctor discussing this issue with the Department of Labor is attached hereto as **Exhibit 36**.  This record was produced by the United States Department of Labor as part of its worker's compensation file.

6. Because Leung was working at the V.A. when the incident allegedly happened, he sought to have it covered under the federal worker's compensation program through the Department of Labor.  The claim was preliminarily denied on the grounds that the primary reason for the surgery was congenital spinal stenosis which would be unrelated to a work injury.  True and correct copies of a December 27, 1982 letter, and February 10, 1983 phone memo discussing this issue with Leung and his physician are attached hereto as **Exhibit 37**. These records were produced by the United States Department of Labor as part of its worker's compensation file.  Following further information provided by Leung's doctor indicating that the treatment and surgery were also related to the herniated disc, the Department of Labor decided to accept the claim.

7. In July of 1983, Leung wrote to the Department of Labor, informing it that he had completed medical school and was starting his residency in

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

LA #4878-6313-6624 v1

3

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

1  ophthalmologist at U.S.C. County Medical Center.  He also demanded a buy-out of
2  his claim.  In response, the DOL explained to Leung that while it did not offer "buy-
3  outs" it would continue to cover any medical treatment associated with his lower
4  back and he could always resubmit a claim for disability if he became unable to
5  work due to his lower back.  True and correct copies of the letters discussing the
6  buy-out issue are attached hereto as **Exhibit 38**.  These records were produced by
7  the United States Department of Labor as part of its worker's compensation file.

8       8.    Leung continued to *sporadically* treat for some low back pain
9  throughout the 1980s, while he completed his residency at U.S.C. and began
10 working as an ophthalmologist in the Los Angeles area.  The reports reflect that
11 Leung was generally quite active and doing well (one of the reports notes he was
12 back to skiing as early February of 1985) but still under treatment for occasional
13 flare-ups.  True and correct copies of worker's compensation status reports Leung's
14 treating physicians submitted to the Department of Labor on March 8, 1985, August
15 14, 1986, and January 29, 1988 are attached hereto as **Exhibit 39(a)**.  These records
16 were produced by the United States Department of Labor as part of its worker's
17 compensation file.  Because Leung still asserted flare-ups of his lower back
18 condition he insisted that the Department of Labor pay for ongoing chiropractic
19 treatment in the form of *massages* and ultrasound.  True and correct copies of
20 treatment notes from Leung's chiropractor submitted which reflect ongoing
21 massage/chiropractic therapy into the early 1990s are attached hereto as **Exhibit**
22 **39(b)** .

23       9.    Despite ongoing treatment for his lower back, when filling out an
24 application for disability insurance submitted to Unum on March 9, 1987, Leung
25 *initially* denied having any ongoing back issues, stating that he had completely
26 recovered following his 1983 surgery.  True and correct copies of relevant pages
27 from the disability application Leung submitted to Unum on March 9, 1987 are
28 ///

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

LA #4878-6313-6624 v1

4

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

1  attached hereto as **Exhibit 39(c)**.  These documents were obtained from the Unum
2  underwriting file and produced in this litigation.
3      10.   By the late 1980s Leung had completed his residency and moved down
4  to San Diego to start his own ophthalmological practice.  Leung testified at his
5  deposition that when he first launched his practice, he rented space from another
6  physician and had his wife serve as his office manager.  By 2005, Leung's
7  ophthalmological practice was grossing almost $2,500,000 and employing over a
8  dozen individuals.  A true and correct copy of the first page of the Leung's business
9  tax return for 2005 as well as a list of Leung's employees in 2006 is attached hereto
10 as **Exhibit 40**.  These documents were obtained from the Unum underwriting file
11 and produced in this litigation.
12     11.   In 1993 Leung decided to join a gym near work in San Diego.   Leung
13 hired a personal trainer named Char Self, who prepared an exercise regime for him
14 which included free weights, resistance machines, pull-ups, stair-master, and rowing
15 machine work.  However, Leung felt she was not aggressive enough and told Self
16 she was not "working him hard enough,' so Shar pushed him harder.  Subsequently,
17 while working out on the rowing machine during one of the training sessions Leung
18 felt a pop in the back his neck and an onset of pain.  A subsequent MRI showed a
19 C5-C6 disc herniation, although it was unclear if it was caused by the rowing
20 incident. A true and correct copy of the September 15, 1995 expert report prepared
21 by Leung's neurologist Charles Jablecki, M.D is attached hereto as **Exhibit 41**.  The
22 report, which describes the gym incident in detail, was part of the Unum claim file
23 and also produced in this litigation.
24     12.   Leung proceeded to sue the personal trainer and the gym which
25 employed her in San Diego Superior Court for causing the C5-C6 disc herniation.
26 A true and correct copy of his complaint is attached hereto as **Exhibit 42(a)** and was
27 obtained directly from the court files in San Diego Superior Court.  In the litigation,
28 Leung took the position that his 1983 lumbar problem was unrelated to his cervical

1  issues. A true and correct copy of separate statement of undisputed facts Leung
2  filed in opposition to the Defendant's Motion for Summary Judgment is attached
3  hereto as **Exhibit 42(b)** and was obtained directly from the court files at the San
4  Diego Superior Court.

5      13.    In October of 1995 Leung filed a motion to continue the November
6  trial date on the grounds he needed to undergo cervical surgery later that month. He
7  submitted a report from his treating physician Joel Ray, M.D., describing the need
8  for an immediate surgery due to a "significant flare-up" of his cervical issues. True
9  and correct copy of the pertinent pages of the motion for a continuance (along with
10 Dr. Ray's report) are attached hereto as **Exhibit 42(c)**. These records were obtained
11 directly from the court files at the San Diego Superior Court. The continuance of the
12 trial was granted, and the case then settled for an undisclosed amount shortly
13 thereafter.

14     14.    Leung never underwent the surgery in October of 1995. In fact, he did
15 not get surgery on his neck for another decade. A subsequent MRI scan that Leung
16 underwent in at the end of 1995 found that the C5-6 disc herniation (which was the
17 basis for his lawsuit) had *internally resolved*. The new MRI report stated: "the
18 central and right sided disc herniation previously noted at C5-6 has resolved and
19 only mild bulging is present. He was further informed by his doctor that now "the
20 C4-5 does appear more significantly herniated." True and correct copies of these
21 reports are attached hereto as **Exhibit 43**. These reports was part of the Unum claim
22 file and produced in this litigation.

23     15.    Leung sought coverage under the worker's compensation system for his
24 new cervical problem on the grounds that it was related to his lower back issues
25 (even though he had taken the opposite position in the litigation against the gym).
26 The worker's compensation carrier approved the claim and Leung was thereafter
27 entitled to have treatment for his cervical issues going forward. Leung also took
28 inconsistent positions regarding his lumbar problems. Specifically, in a

reoccurrence of disability form submitted to the Labor Department on December 7, 1992, Leung stated that he never recovered from the original 1982 lumbar problems. A true and correct copy of this form is attached hereto as **Exhibit 44(a)** and was produced by the United States Department of Labor as part of its worker's compensation file.   However, on September 18, 1995 while applying for disability insurance with Northwestern Mutual Life Insurance Company (Northwestern) Leung asserted that his 1983 surgery had been successful in alleviating his low back condition and thus the company did not need to be concerned about that condition for underwriting purposes. True and correct copies of the relevant documents from Leung's application to Northwestern are attached hereto as **Exhibit 44(b)** and were produced by Northwestern in response to a business records subpoena.  Leung made this statement to Northwestern on *September 18, 1995,* even though he was contemporaneously being treated for ongoing lumbar spine issues.  Specifically, on *September 15, 1995* Leung reported to Dr. Jablecki that he had another flare-up of his back problems and he returned to his therapist for it.  A true and correct copy of the pertinent pages from Dr. Jablecki's *September 15, 1995* report are attached hereto as **Exhibit 44(c)**.  This report was part of the Unum claim file and produced in this litigation.

16.     Following the resolution of his lawsuit and into the early 2000s, Leung continued to treat for miscellaneous lower back and neck pain several times a year which was covered under his worker's compensation claim.  Leung's principal treater during this time-period was neurologist Charles Jablecki, M.D.  In early 2000, Leung started to consult consulted with spine surgeon Richard Ostrup, M.D. for his cervical issues. Dr. Ostrup diagnosed Leung's condition as cervical stenosis at C5-6 caused by degenerative disc disease.   It was further noted that there were also issues at the C4-5 level and later C3-4, further supporting a degenerative process in the neck area.  The 1993 rowing incident was not referenced as a cause of his problem.  Dr. Ostrup performed a discectomy/fusion at C5-6 on Leung on

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4878-6313-6624 v1

7

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

January 19, 2004. True and correct copies of certain treatment records from Dr. Ostrup, including his December 9, 2003 worker's compensation report and his January 19, 2004 operative report are attached hereto as **Exhibit 45**. These documents were part of the Unum claim file and produced in this litigation.

17. After his cervical surgery Leung was extremely active. He not only continued to work full time and grow his business, but he was working out at the gym regularly and engaging in a variety of other extra-curricular activities in his spare time, including training for marathons. A true and correct copy of the March 2, 2005 report from Leung's cardiologist, Peter Hoagland, M.D. which notes that Leung worked out at the gym seven days a week is attached hereto as **Exhibit 46(a)**. This report was obtained through a business records subpoena to Dr. Hoagland. In late 1995, Leung also trained for and ran the Honolulu marathon at the age of 51. A true and correct copy of Leung's marathon result which was authenticated at Leung's deposition is attached hereto as **Exhibit 46(b)**. While training for the marathon, Leung apparently had his massages paid for through the worker's compensation system pursuant to a request by Dr. Jablecki. A true and correct copy of Dr. Jablecki's request to the Department of Labor for massages and therapy in November of 2005 is attached hereto as **Exhibit 46(c)**. This record was produced by the United States Department of Labor as part of its worker's compensation file.

18. Throughout the early 2010s, Leung continued to receive treatment from Dr. Jablecki several times a year. In late 2014, Dr. Jablecki retired, and Leung's care was transferred to rehabilitation and pain management specialist Michael Moon, M.D. On average, Leung saw Dr. Moon approximately 5 times per year. Dr. Moon testified that Leung's average visit lasted about 15 minutes, for a maximum total treatment of about 2 hours per year. Dr. Moon would also provide Leung epidurals when needed. True and correct copies of the billing records from Dr. Moon between August of 2015 and June of 2020 (when Leung submitted his disability claim) are attached hereto as **Exhibit 47(a)**. True and correct copies of

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4878-6313-6624 v1

8

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

certain select treatment notes authored by Dr. Moon between August of 2015 and June of 2020 are attached hereto as **Exhibit 47(b)**.  These records were produced by Pain Care of San Diego (Dr. Moon's practice name)  in response to a business subpoena and authenticated at the deposition of Dr. Moon.

19.  Leung's neck and back issues were not an impediment to either his work or leisure activities.  Leung not only increased the profitability of his business during the 2010s but also found time to engage in numerous extra-curricular activities and travel.  Indeed, Leung confirmed in his deposition (attached hereto as **Exhibit 53**) that in the interim period between his original lumbar surgery in **1983** and the alleged gym incident in **1993** he was able to golf, play tennis and ski, in addition to working out regularly at the gym.  Leung further confirmed that in the interim period between the gym incident in **1993** and his cervical surgery in **2004** he was still able to do such things as golf, scuba dive and still work out regularly at the gym.  Finally, following his cervical surgery in **2004** Leung continued to work out regularly at the gym (up to seven days a week at the gym), ski and even trained for and ran a marathon.  His travel schedule was also impressive. It included going to South Africa on safari and a Vail ski trip in 2010; Costa Rica, Europe, and the Northern California Coast in 2011; the Northeast, Spain, and Myanmar/Cambodia in 2012; and Disney World and Italy in 2012.  These trips are verified by a schedule filed in Leung's divorce proceeding listing his vacation schedule from 2009 through 2013.  A true and correct copy of this schedule is attached hereto as **Exhibit 48** and was authenticated at Leung's deposition.

20.  In 2018, Leung entered into preliminary discussions with a company called Nvision, Inc. to sell his practice.  The parties entered into a Mutual Confidentiality and Disclosure Agreement, dated January 17, 2018.  A true and correct copy of this agreement was produced by Nvision, Inc. pursuant to a business record subpoena and is attached hereto as **Exhibit 49**.  A letter of intent was signed between the parties in April of 2019.  As part of the deal, Leung agreed to sell his

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4878-6313-6624 v1

9

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

practice to the company (the purchase agreement) and to continue to work at the practice while Nvision transitioned the practice to a younger doctor (the employment agreement). Under the purchase agreement, Leung received an amount of money at the sale closing, with an additional *potential* payment of additional monies over three years if the practice earned a certain amount while he was working there and transitioning it to the new doctor (the "***earn-out provision***"). Under the employment agreement, Leung's compensation was a certain percentage of the net collected patient fees for which he performed work and a certain sum per Lazik he provided. Accordingly, Leung only received compensation for the work he performed.

21. The actual sale of the practice was completed, and the employment agreement entered into, on **November 1, 2019**. True and correct copies of the relevant pages of the purchase agreement without addendums are attached hereto as **Exhibit 50(a)**. True and correct copies of the relevant pages of the employment agreement without addendums are attached hereto as **Exhibit 50(b).**

22. Leung worked as an employee at Nvision through the end of 2019 and into early 2020 without issue. On March 19, 2020, California declared a health emergency and issued a statewide stay at home order. Following the COVID shut-down order, Leung approached Dr. Moon about going out on disability effective May 28, 2020. A true and copy of Dr. Moon's generic disability certification is attached hereto as **Exhibit 51(a)**. This document was authenticated at the deposition of Dr. Moon. Dr. Moon thereafter signed forms and "wrote" letters certifying Leung's disability to Unum (which provided benefits at $9,430 per month in benefits); Northwestern Mutual (which provided benefits at $7,500 per month in benefits); the federal worker's compensation carrier (which provided approximately $8500 per month in benefits); and an ADA/FMLA claim with his employer Nvision, Inc. The disability certification forms he submitted to Unum, Northwestern Mutual and the Department of Labor all stated that Leung was totally and permanently

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4878-6313-6624 v1

10

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

disabled. The ADA/FMLA form submitted to the employer by Dr. Moon merely sought an extension of leave to allow Leung to treat his condition and potentially return to work. A true and correct copy of a disability certification Dr. Moon submitted to Unum on June 17, 2020 stating that Leung was permanently disabled is attached hereto as **Exhibit 51(b)**. A true and correct copy of the disability certification Dr. Moon submitted to Northwestern on June 17, 2020 stating that Leung was permanently disabled is attached hereto as **Exhibit 51(c)**. A true and correct copy of a disability certification Dr. Moon submitted to United States Department of Labor on October 22, 2021 stating that Leung was permanently disabled is attached hereto as **Exhibit 51(d)**. A true and correct copy of a disability leave certification Dr. Moon submitted to his employer under the FMLA and ADA on July 7, 2020 and October 7, 2020 stating that Leung needed a leave of absence to attempt to get better is attached hereto as **Exhibit 51(e)**.

23. Leung was controlling how his various disability claims to different entities were being certified by Dr. Moon. Certain attending physician's statements in support of the disability claim he submitted (e.g., Northwestern Mutual, Leung's employer) were filled out by Leung and then simply signed by Dr. Moon. A true and correct copy of correspondence from Leung to Dr. Moon reflecting this fact is attached hereto as **Exhibit 52(a)**. These records were obtained through a subpoena to Dr. Moon and authenticated at his deposition. Unum also suspects that certain narrative letters that Dr. Moon sent to various entities (including Unum) during the claim were ghost written by Leung and then placed on Dr. Moon's letterhead verbatim before being sent out. A true and correct copy of the draft narrative letter that Leung sent to Dr. Moon on September 14, 2020 for the worker's compensation benefit purposes, along with a copy of the letter from Dr. Moon actually received by the Department of Labor is attached hereto as **Exhibit 52(b)**. The two letters are verbatim. These records were obtained through a subpoena to Dr. Moon and authenticated at his deposition as well being produced by the Department of Labor

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

LA #4878-6313-6624 v1

11

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI

as part of the worker's compensation file.  Finally, Dr. Moon admitted that following Leung's urging, he informed the worker's compensation carrier that Leung was disabled from not just his "own occupation" as an ophthalmologist but "any occupation" so Leung would be eligible for a higher monthly disability benefit. True and correct copy of the emails exchanges reflecting this conversation are attached to this declaration as **Exhibit 52(c).**  These records were obtained through a subpoena to Dr. Moon and authenticated at his deposition.

24. True and correct copies of certain pages from the deposition of Dr. Leung taken on April 5, 2023 are attached hereto as **Exhibit 53**.

25. True and correct copes of certain pages from the deposition of Dr. Moon taken on March 9, 2023 and April 29, 2023 are attached hereto as **Exhibit 54**.

26. True and correct copies of certain pages from the deposition of Shannon Cartier taken on November 30, 2022 are attached hereto as **Exhibit 55**.

27. True and correct copies of certain pages from the deposition of Gregory Cunniff, the FRCP 30(b)(6) witness for NVISION Laser Eye Centers, Inc., taken on May 19, 2023 are attached hereto as **Exhibit 56**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 24th day of July, 2023, at Los Angeles, California.

*s/ Michael B. Bernacchi*
Michael B. Bernacchi

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4878-6313-6624 v1

12

Case No. 3:22-cv-00767-W-JLB
DECLARATION OF MICHAEL B. BERNACCHI