1  Michael B. Horrow, State Bar No. 162917
   Nichole D. Podgurski, State Bar No. 251240
2  DONAHUE & HORROW LLP
   1960 E. Grand Avenue, Suite 1215
3  El Segundo, CA 90245
   Tel: (310) 322-0300
4  Fax: (310) 322-0302
   Email: mhorrow@donahuehorrow.com
5         Npodgurski@donahuehorrow.com

6  Russell G. Petti, SBN 137160
   The Law Offices of Russell G. Petti
7  466 Foothill Blvd., # 389
   La Canada, California 91011
8  818 952-2168 Telephone
   818 952-2186 Facsimile
9  Email: Rpetti@petti-legal.com

10 Attorneys for Plaintiff
   Richard J. Leung, M.D.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| RICHARD J. LEUNG, M.D., | CASE NO: 3:22-cv-00767-W-JLB |
|---|---|
| Plaintiff, | PLAINTIFF RICHARD LEUNG, M.D.'S REPLY TO DEFENDANT UNUM LIFE INSURANCE COMPANY'S OPPOSITION TO HIS MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA; and DOES 1 to 10, inclusive, | DATE: September 18, 2023 |
| Defendants. | COURT: Before the Honorable Thomas J. Whelan, United States District Judge |

Plaintiff Richard J. Leung, M.D., respectfully submits the following Reply to UNUM Life Insurance Company's Opposition to his Motion for Summary Judgment.

Dated: September 11, 2023       Michael B. Horrow
                                Nichole D. Podgurski
                                Donahue & Horrow LLP

                                Russell G. Petti
                                The Law Offices of Russell G. Petti

                                By: _____S/*Michael B. Horrow*_____
                                     Michael B. Horrow
                                     Attorneys for Plaintiff Richard Leung, M.D.

**Memorandum of Points and Authorities**

I. **Introduction.**

Dr. Richard Leung seeks partial summary judgment that the claims handling of UNUM Life Insurance Company of America ("UNUM") was bad faith as a matter of law on two separate grounds. First, UNUM failed to properly investigate Dr. Leung's claim by obtaining his Department of Labor ("DOL") workers' compensation file when it *knew* that file contained significant evidence that Dr. Leung's disability was caused by his accidental injuries. Second, when it finally did obtain the DOL file, with its two independent medical examinations ("IMEs") by specialists who determined Dr. Leung's spinal problems were due to accidents, UNUM violated its continuing duty of good faith by failing to re-evaluate its decision.

UNUM responds by misstating both the facts and Dr. Leung's positions, innuendo, and attacks on Dr. Leung's character which are irrelevant and which do not stand up to scrutiny. As explained below, UNUM presents no valid grounds for denying Dr. Leung's request for partial summary judgment.

II. **Dr. Leung's motion for partial summary judgment is procedurally proper.**

Dr. Leung seeks partial summary judgment that UNUM's investigation and its failure to re-consider its denial post-litigation constitute bad faith as a matter of law. UNUM, relying on a number of unpublished district court decisions, argues that this is not procedurally proper. "Under Rule 56, a party may not seek adjudication of non-determinative sub-issues within a cause of action." (Brf. 16:3-4).

In fact, prior to the 2010 amendment to Fed. R. Civ. Proc. 56 there was a split of authority on whether a party could obtain partial summary judgment on a portion of a claim without adjudication of the entire claim. Compare *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 (9th Cir. 1981)("The partial summary judgment is merely a determination before the trial that certain issues shall be deemed established in advance of the trial.") with *Franklin-Mason v. Penn*, 259 F.R.D. 9, 11 (D.D.C. 2009) ("a party may not file a motion for partial summary judgment on a fact or an element of a claim").

However, in 2010 congress clarified the issue by adding the following sentence to the beginning of Fed. R. Civ. Proc. 56: "A party may move for summary judgment, identifying each claim or defense–*or the part of each claim or defense*–on which summary judgment is sought." Fed. R. Civ. Proc. 56(a)(emphasis added). According to the Advisory Committee Notes to the 2010 Amendment, this sentence was "added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." As such, courts now routinely entertain motions like the one brought by Dr. Leung. *E.g. Holguin v. City of San Diego*, 135 F. Supp. 3d 1151, 1158 (S.D. Cal. 2015) ("Partial summary judgment is a mechanism through which the court deems certain issues established before trial."); *United States v. Sterling Centrecorp Inc.*, 208 F. Supp. 3d 1126, 1132 (E.D. Cal. 2016) ("Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.").

As for whether Dr. Leung's motion is improper because he is not also seeking summary judgment on his claim for breach of contract, UNUM misses the point. Were Dr. Leung seeking *summary judgment* on his bad faith claim he would necessarily have to establish that benefits were improperly denied. However, Dr. Leung is not seeking summary judgment on his entire bad faith claim but only one of the factual elements of that claim, which is the purpose of a partial summary judgment motion. So, for example, in *Sterline Centrecorp* the Court granted a partial summary judgment motion which was limited to just the issue of damages. *Sterling Centrecorp*, 208 F. Supp. 3d at 1338.

III. **UNUM's failure to properly investigate Dr. Leung's claim constituted bad faith as a matter of law.**

    A. **UNUM's character evidence is irrelevant to the issue of whether it conducted a proper investigation.**

In arguing that it conducted a reasonable investigation UNUM relies heavily on character evidence it acquired since the commencement of litigation, contending that Dr. Leung assisted Dr. Moon in his communications with insurers and the DOL, speculating that the timing of his disability might have something to do with COVID or to maximize

2
Dr. Leung's Reply to UNUM's Opposition; Case No. 3:22-cv-00767-W-JLB

his disability payments, contending (without evidence) that he was getting the DOL to pay for sports massages, and so on. All of this evidence is irrelevant on the issue of whether UNUM violated its duty to conduct a reasonable investigation, which must be based on the evidence it had at the moment of denial.

> In evaluating the evidence to see if there was any unreasonable conduct by the Company, it is essential that no hindsight test be applied. The reasonable or unreasonable action by the Company must be measured as of the time it was confronted with a factual situation to which it was called upon to respond.

*Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 32 (1978).[1] So, for example, UNUM contends that it learned, post-litigation, that Dr. Einbund's conclusion that Dr. Leung was disabled from his injuries might have been influenced by Dr. Moon's September 14, 2020 letter to the DOL (Ex. 52(b)-006) which, UNUM alleges, was ghost written by Dr. Leung. This is, first, untrue. Dr. Einbund never saw Dr. Moon's letter, at least his detailed IME report (Ex. R) makes no mention of it. And Dr. Levine's IME report was written well before Dr. Moon even began treating Dr. Leung. More significantly it is irrelevant because the reasonableness of UNUM's investigation must be judged by what it knew at the moment of denial.

B.  **The evidence in the DOL file is highly relevant.**

UNUM also argues the DOL workers' compensation file is not relevant because the workers' compensation system utilizes different standards than the policies. (Brf. 21:9-19). This misstates Dr. Leung's position, which is not that UNUM is bound by the DOL's conclusion but that it should have obtained the DOL file to determine *why* it reached a contrary conclusion. This was the position taken by *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 636 (9th Cir. 2009) with respect to Social Security disability determinations in the analogous area of ERISA disability claims:

> While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was the product of a principled and deliberative reasoning process. In fact,

---

[1] Disapproved of on other grounds by *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979)

not distinguishing the SSA's contrary conclusion may indicate a failure to consider relevant evidence.

*Montour*, 588 F.3d at 635 (citation and attribution omitted).

In addition, UNUM contends that the workers' compensation decision can be disregarded due to the DOL's lax standards, relying on Dr. Leung's out-of-context statement that the DOL will "approve everything." (Brf. 21:19-21). In fact, the DOL's claims handling is anything but lax, especially when compared with the manner in which UNUM adjudicated Dr. Leung's claim. Before the DOL decided Dr. Leung's claim it had him examined twice, once by a Neurologist (Dr. Levine) and once by an Orthopaedic Surgeon (Dr. Einbund). Not only did the DOL doctors actually examine Dr. Leung but both reviewed his x-ray and MRI films. UNUM, in turn, relied entirely on "pure paper" file reviews which courts look at with some suspicion. "Although MetLife is not required to ask its physicians to conduct an in-person examination, the Ninth Circuit has viewed 'pure paper' reviews with some skepticism." *Popovich v. Metro. Life Ins. Co.*, 281 F. Supp. 3d 993, 1004-05 (C.D. Cal. 2017). Some of UNUM's file reviewers were not appropriate specialists–Dr. Milos' speciality is sports medicine–and *none* of them had access to or reviewed any MRI or x-ray films. UNUM's claims handling standards are so slack that the person responsible for UNUM's decision, Adam Stimson, *did not even know the correct legal standard to apply when he made that decision.* (Ex. AR 2:20-3:7). Given all of this, that UNUM has the chutzpah to criticize the DOL's claims handling is nothing short of remarkable.

C. **UNUM did not obtain the DOL file.**

UNUM then resorts to misstatement to justify its investigation, claiming that it did obtain the workers' compensation DOL file. Specifically, UNUM states that it asked Dr. Leung to provide the DOL file and that he did so with the documents accompanying his letter of October 20, 2020. (Brf. 4-6). This is simply untrue.

UNUM supports its claim with two emails between Ms. Sullo and Dr. Leung where the DOL file is discussed. (Ex. 57, 58). In neither of those emails did Ms. Sullo request

4
**Dr. Leung's Reply to UNUM's Opposition; Case No. 3:22-cv-00767-W-JLB**

1 Dr. Leung to provide the DOL file. Dr. Leung did not represent, in either of these email chains, that he would obtain the DOL file. Further, the purpose of Dr. Leung's October 20, 2020 letter was not to provide UNUM with the DOL file, in fact this letter never even mentions the DOL file. Rather, (as discussed in detail in Dr. Leung's opposition brief at pages 5-7) Dr. Leung's October 20th letter is clear that its purpose is to provide medical records substantiating this his disability is due to his accidental injuries. (Ex. AF). In his letter Dr. Leung does not tell UNUM that any of these documents are from his DOL file. And, significantly, the documents submitted by Dr. Leung do not contain the key documents from that file, which are Dr. Levine's and Dr. Einbund's IMEs.

In addition, UNUM cannot farm out its responsibility for an adequate investigation by placing the burden of obtaining the DOL file on Dr. Leung. In *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1036 (1984) the insured's physician had filled out the insurer's form attesting to his disability but had neglected to fill in the dates of treatment. The insurer denied his claim because of the failure to provide this requested information. In reversing the grant of summary judgment on the bad faith claim, the Court held that the insured's failure to supply the treatment dates did not excuse the insurer's obligation to obtain the dates itself. "Although presumably one phone call to the doctor could have supplied the omitted information Sentinel offers no explanation for why it did not adopt this course of action." *Id.* at 1047-48.

IV. **UNUM's failure to reconsider its denial in light of the DOL file and the Albertstone reports are bad faith as a matter of law.**

A. **UNUM's duty of good faith required it to reconsider its denial in light of the DOL file and the Albertstone reports.**

In his motion Dr. Leung contends that UNUM's duty of good faith and fair dealing continued after the filing of litigation and that UNUM violated this duty when it failed to reconsider its denial upon receipt of the DOL file and the Albertstone reports. In fact, Ms. Connor testifies that UNUM has a *policy* of violating its post-litigation obligation to its insureds with a blanket refusal to re-consider claims after litigation commences. (Ex. Z).

///

UNUM does not dispute that its duty of good faith continues in litigation but claims, citing to *Nies v. Nat'l Auto. & Cas. Ins. Co.*, 199 Cal. App. 3d 1192 (1988) that this duty does not require it to "reevaluate a claim every time the insured's attorney presents a new argument or a new piece of information." (Brf. 22:21-24). In fact, *Nies* supports Dr. Leung's position more than UNUM's.

In *Nies* the insurer initially denied coverage for an auto accident and the insured filed suit. The insurer's litigation counsel recognized the denial was improper and, upon advice of counsel, the insurer paid the claim. The insured's bad faith claim continued and the trial court allowed him to introduce the insurer's responsive pleadings–which occurred after it paid the claim–as evidence of bad faith. *Id.* at 1194. On appeal the Court held that the insurer, having recognized its post-litigation obligation and paid the claim, could not be found in bad faith for its subsequent actions:

> National referred the matter to its retained counsel, who shortly thereafter discovered a single Court of Appeal decision holding that the exclusion was not applicable to the type of vehicle which caused plaintiff's injuries. Ten days later, plaintiff received a check for the full amount of the policy limits. Given the paucity of evidence of bad faith, it is reasonably probable that a different verdict would have resulted absent the improperly introduced pleadings, and the testimony of plaintiff's expert that National's answer and cross-complaint "constitute[d] the bad faith in this case". *Id.* at 1202.

Here Dr. Leung is not contending that the arguments of UNUM's counsel constitute bad faith, but only that it was, like the insurer in *Neis*, obliged to reconsider its position when new information calls its decision into question. UNUM cites no case standing for the proposition that its post-litigation obligation did not include re-considering its decision when evidence shows its original decision is wrong and there is none, given the clarity of California law that an insurer's "unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 880 (2000).

In addition, the Court should keep in mind that the post-litigation evidence here is especially significant, perhaps as significant as any of Dr. Leung's counsel have seen in their decades of experience. The DOL file contained *two* IME reports by impartial

6

specialists who, after examining Dr. Leung and reviewing his medical records and MRI films, determined his spinal problems were caused by accidental injuries. Evidence of this character surely must be sufficient to require UNUM to reconsider a denial which rested on the opinions of three physicians who did not examine Dr. Leung or review his films.

UNUM then argues that it is permitted to decide *how* it will fulfil its post-litigation duty of good faith, implying it is sufficient to place the matter in the hands of its litigation counsel. But, as pointed out in Dr. Leung's motion, UNUM's litigation counsel have duties only to their client, not Dr. Leung, and so UNUM cannot properly delegate this obligation to them. More significantly, Mr. Bernacchi does not testify that he or anyone else at his firm did anything to comply with UNUM's post-litigation duty of good faith.[2]

B. **UNUM's after-acquired character evidence is irrelevant as there is no testimony this caused UNUM not to reconsider its decision.**

UNUM argues that the post-litigation evidence was suspect. UNUM complains that Dr. Leung might have, through Mr. Moon, influenced the DOL decision and that his counsel objected to a subpoena served on Dr. Alberstone. But, as explained, above, Dr. Moon's letter had no impact on the DOL's decision as Dr. Einbund and Dr. Levine never saw it. As for the objection to the Alberstone subpoena this, like much of UNUM's contentions, is without substance when examined. When UNUM obtained the DOL file it had every scrap of Dr. Leung's medical records, 4000+ pages from 1982 to the present, and UNUM does not describe what else it hoped the subpoena would reveal. Moreover, while UNUM says it served the subpoena "to help it understand the basis for his opinions" this is also untrue. The traditional way for a party to "understand" the opinions of an opposing party's witnesses is to depose the expert. Here UNUM never asked for Dr. Albertstone's deposition and, as such, never took his deposition.

---

[2] In fact, UNUM argued during plaintiff's motion to compel that any actions taken by its litigation counsel to re-evaluate Dr. Leung's claim were protected from discovery by the attorney-client privilege. In other words, UNUM's position is that it may turn its continuing duty of good faith over to its trial lawyer who, because of the privilege, is not required to say what he did to fulfill this duty. Were this the law an insurer's post litigation obligation of good faith would be rendered meaningless.

1    Most significantly, there is no relevance to this or any of UNUM's character and
2 "other act" evidence because UNUM never claims this evidence *caused* its failure to
3 reconsider its denial upon receipt of the DOL file and the Albertstone reports. If UNUM's
4 claims handler had submitted a declaration that "UNUM declined to re-review Dr. Leung's
5 denial post-litigation because of all the terrible things we learned about him" than some of
6 this evidence could, conceivably, be relevant. But there is no testimony, from anyone, that
7 this evidence had any impact on UNUM's claims decisions. As such, it is inadmissible as
8 it fails to make a material fact relevant to the outcome of the suit more or less likely. *S.
9 California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

10    As near as counsel can tell, the sole purpose for UNUM's character evidence is to
11 try to make Dr. Leung look bad so as to cause the Court to be disinclined to rule in his
12 favor. This would be improper at trial; it is certainly improper on summary judgment.

13 V.    **UNUM's character evidence is largely without substance.**

14    The bulk of UNUM's motion and its opposition is evidence attacking Dr. Leung's
15 character. As detailed in Dr. Leung's opposition and its objection to evidence much of
16 these allegations, when examined, lack substance. While space prevents Dr. Leung from
17 addressing all of UNUM's allegations, some additional ones are addressed below.

18    A.    **Many of UNUM's accusations proceed by conflating unrelated facts.**

19    Many of UNUM's attacks on Dr. Leung are accomplished by conflating two
20 unrelated facts. For example, Dr. Leung became disabled a few months after California
21 announced its COVID restrictions. With no further evidence other than the nearness of
22 these dates UNUM accuses Dr. Leung of really going on disability due to COVID. Then
23 UNUM notices that Dr. Leung's disability was within six months of his 65th birthday, after
24 which he would no longer be entitled to lifetime benefits. Aha! UNUM asserts, *this* must
25 be why Dr. Leung went on disability. In fact, Dr. Leung submits that UNUM should have
26 to choose between accusing him of timing his disability to maximize his benefits or going
27 on disability because of COVID.
28 ///

And then there is UNUM's accusation that Dr. Moon was having the DOL pay for his "sports massages." In fact, as indicated in Exhibit AH, Dr. Leung had continual physical therapy for his spinal injuries over the years and some of this therapy might superficially resemble a massage. So UNUM pulls a record of one of Dr. Leung's physicians many requests for physical therapy (Ex. 46(c)) which happens to coincide with when Dr. Leung was training for a marathon and, with no further evidence, this physical therapy is transmuted into sports massages.

B. **Dr. Moon filled out the FMLA form and UNUM's form differently because they were seeking different information.**

One issue repeatedly trumpeted by UNUM is that Dr. Moon's FMLA certification to Nuvision held out the chance that he might return to work while his certification to UNUM indicated that his restrictions were permanent. UNUM contends that Dr. Leung was secretly directing all of this out of some sinister financial motive.

Initially, the different answers are explained by the fact that the questions were different. The UNUM form asked only for "the duration of these restrictions and limitations" and, given that Dr. Moon believed that Dr. Leung would never recover sufficiently to return to full time work, "permanent" was the correct answer. (Ex 51(b)-002). The FMLA form, in turn, also asked, if there were "recurring conditions" and the percentage of "'active' and 'inactive' phases." Given that Dr. Moon's symptoms did fluctuate over time, "unable to be determined at this time" was the safest answer. (Ex. 51(e)-006).

More significantly, UNUM fails to explain how any of this mattered to Dr. Leung. Dr. Leung was entitled to FMLA benefits if he had "a serious health condition" such that he was "unable to perform one or more of the essential functions of his or her job." 29 C.F.R. § 825.200(a)(4). There is no requirement that the problem be temporary. UNUM also claims that answering in this fashion could make Dr. Leung eligible for the earn-out provision of his agreement with Nvision but, in fact, an employee on FMLA leave has an absolute right to reinstatement regardless of whether his provider lists his disability as

1 temporary or permanent. 29 C.F.R. § 825.214. So there is no benefit to Dr. Leung in the manner in which Dr. Moon filled out this block on the form, one way or the other.

### C. Dr. Leung did not mislead UNUM by selectively providing records.

UNUM also contends that Dr. Leung selected the medical records he provided so as to "mislead Unum about the original etiology of his back condition (e.g. congenital stenosis)." (Brf. 24:18-19). Like most of UNUM's allegations this falls apart on analysis. Initially, most of the medical records provided by Dr. Leung indicate his symptoms are due to the injuries because that is what most of the totality of the records state. That UNUM's counsel can cherry pick those few records discussing congenital issues does not mean that these constitute a substantial portion of the file.

Second, Dr. Leung did provide documents that indicate that congenital issues were a factor. For example, in his September 2, 2021 letter Dr. Leung provided UNUM with Dr. Ostrup's July 30, 2021 letter that attributed Dr. Leung's spinal problem to a mix of injury and congenital factors. (Ex. 25-001, 03).

More significantly, any and all medical records in the file that predate 2015 were provided by Dr. Leung. If these records did not provide *some* evidence of congenital factors how is it that all three of UNUM's file reviewers concluded these records showed Dr. Leung's congenital factors contributed to his disability? Once again UNUM will have to choose. If UNUM is correct that Dr. Leung did not provide records showing his spinal symptoms were due–in part–to some congenital factors then it must also agree that the opinions of its file review physicians are unsupported by any evidence.

Dated: September 11, 2023

Michael B. Horrow
Nichole D. Podgurski
Donahue & Horrow LLP

Russell G. Petti
The Law Offices of Russell G. Petti

By: _____S/*Michael B. Horrow*_____
Michael B. Horrow
Attorneys for Plaintiff Richard Leung, M.D.